926 A.2d 412

ROBERT JAMES PACILLI HOMES, L.L.C., PLAINTIFF–APPEL-LANT/[1] CROSS–RESPONDENT, v. TOWNSHIP OF WOOLWICH AND THE WOOLWICH TOWNSHIP PLANNING BOARD, DE-FENDANTS–RESPONDENTS/CROSS–APPELLANTS.

WOOLWICH LANDOWNERS ASSOCIATION, PLAINTIFF–APPEL-LANT/[1] CROSS–RESPONDENT, v. THE TOWNSHIP OF WOOL-WICH, DEFENDANT–RESPONDENT/CROSS–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 21, 2007—Decided July 5, 2007.

---

[1] By letters of May 22, 25, and October 2, 2006, we have been advised that plaintiffs' appeals are moot, and the only remaining issues are those contained in the cross-appeals of Township of Woolwich and the Township of Woolwich Planning Board.

320

Before Judge CUFF, WINKELSTEIN and BAXTER.

*Gary M. Marek* argued the cause for respondents/cross-appellants (*Timothy D. Scaffidi,* attorney; *Mr. Marek,* on the brief).

*William F. Ziegler* argued the cause for appellant/cross-respondent *Robert James Pacilli Homes, L.L.C.* (*Holston, MacDonald, Uzdavinis, Eastlack, Ziegler & Lodge,* attorneys; *Mr. Ziegler* and *Samuel J. Myles,* on the brief).

*Flaster Greenberg,* attorneys for appellant/cross-respondent *Woolwich Landowners Association* (*Richard J. Hoff, Jr.,* on the letter relying on the brief filed on behalf of appellant/cross-respondent *Robert James Pacilli Homes, L.L.C.*).

The opinion of the court was delivered by

CUFF, P.J.A.D.

In these consolidated appeals, we consider whether a proposed ordinance to change density and bulk standards and to increase

the amount of open space and greenway land requirements for subdivisions within three residential zones triggered the personal notice requirement of *N.J.S.A.* 40:55D–62.1. We hold that, given the breadth and impact on development of real property within each zone, the amendments effected a change of classification within the R–1 and R–2 zones; therefore, personal notice to all owners of real property in the affected districts was required, and we affirm the order setting aside the 2005 amendments to the zoning ordinance of defendant Township of Woolwich (the Township).

In 2003, the Township Committee adopted a zoning ordinance that contained the following bulk and density requirements for the R–1 residential zone:

| | |
|---|---|
| Minimum Lot Size: | 87,120 sq. ft. (2 acres) |
| Minimum Lot Width: | 185 feet |
| Minimum Yards: | |
| Front | 60 feet |
| Side | 25 feet |
| Rear | 50 feet |
| Maximum Building Coverage: | 10% |
| Maximum Impervious Coverage: | 30% |
| Maximum Building Height: | 35 feet |
| Maximum Gross Density: | .5 units/acre |

The 2003 zoning ordinance set the following bulk and density requirements for the R–2 residential zone as:

| | |
|---|---|
| Minimum Lot Size: | 65,340 sq. ft. (1.5 acres) |
| Minimum Lot width: | 160 feet |
| Minimum Yards: | |
| Front | 50 feet |
| Side | 20 feet |
| Rear | 30 feet |
| Maximum Building Coverage: | 10% |
| Maximum Impervious Coverage: | 35% |
| Maximum Building Height: | 35 feet |
| Maximum Gross Density: | 0.66 units/acre |

In 2005, the Township Committee proposed certain revisions to the zoning ordinance pertaining to the R–1 and R–2 residential

zones.[2] The stated intent of the R–1 residential district is "to provide appropriate regulations for the preservation of agriculture, natural resources, scenic vistas and the rural landscape" of the Township and to allow "development of single-family detached dwellings and other permitted uses in portions of the Township characterized as rural. . . ." To that end, the Township proposed to offer three development options in the R–1 zone. The proposed ordinance expressly stated that "Options 1 and 2 are strongly encouraged as the means to best maintain the rural character while preserving open space and natural resources" in the district.

To achieve its stated purpose, the proposed amendment to the R–1 zone "provides . . . flexibility in designing new residential subdivisions . . . by allowing two forms of 'Conservation Zoning' based upon the number of DU (dwelling units) as determined by the conventional zoning 'by-right' development." Thus, Option 1, also denominated as Neutral Density and Basic Conservation, "provid[es] for residential uses at the density permitted by the underlying R–1 zoning district. Greenway lands shall comprise at least half the tract." Option 2, also denominated Country Properties, "provid[es] for very low densities appropriate to rural situations, with flexible and reduced design standards in instances where a permanent conservation easement is offered to maintain such uses." Option 3, also denominated Conventional Lotting, continues the bulk and density provisions of the 2003 ordinance.

The following bulk and density requirements were proposed for Option 1 and Option 2 in the 2005 amendment for the R–1 zone:

| | Option 1 | Option 2 |
|---|---|---|
| Density | 87,120 sq. ft./DU maximum gross density | 10 acres/DU |
| Lot Size Max./ Min. Lot Width | 1.3 acres 150 feet | NA |

---

2 We confine our discussion to the details of the amendments to the R–1 and R–2 zones because plaintiff Robert James Pacilli Homes, L.L.C. had development applications pending for parcels located only in the R–1 and R–2 zones.

| | | |
|---|---|---|
| Lot Size Avg./ | 1 acre (43,560 sq. ft.) | 10 acres |
| Min. Lot Width | 125 feet | 300 feet |
| Lot Size Min./ | ½ acre (21,780 sq. ft.) | 5 acres |
| Min. Lot Width | 100 feet | 300 feet |
| Open Space: | 50% | No Common Open Space |
| Yards: | | |
| Front | 30 feet | See Text |
| Side | 10 feet (40 feet between bldgs.) | Below |
| Rear | 40 feet | |
| Max. Building Coverage: | NA | NA |
| Max. Impervious Coverage: | 30% on each lot | 12% |
| Max. Building Height: | 35 feet | 35 feet |

The proposed yard regulations for Option 2 or Country Properties provided that front yards shall be 150 feet from the right-of-way of existing municipal roads and 40 feet from the right-of-way of new subdivision roads. The amendment proposed that rear yards should be at least 50 feet for principal buildings and 10 feet for most accessory buildings and side yards should be 25 feet.

The stated intention of the proposed amendments to the R–2 residential zone is "to provide appropriate regulations for the preservation of agriculture, natural resources, scenic vistas and the rural landscape" of the Township coincident to "the development of single-family detached dwellings and other permitted uses in portions of the Township characterized as rural." Three development options are offered for the R–2 zone: Option 1 and Option 2 are "strongly encouraged" as "the means to best maintain the rural character while preserving open space and natural resources...." In addition, the R–2 zone is designed "to encourage the incorporation of affordable housing within the normal development of the Township."

Option 1, also denominated the Neutral Density and Basic Conservation option, provides for "residential uses at the density

permitted by the underlying R–2 zoning district. Greenway lands shall comprise at least half the tract." Option 2, also denominated Country Properties, provides for "very low densities appropriate to rural situations, with flexible and reduced design standards in instances where a permanent conservation easement is offered to maintain such uses." Option 3, also denominated the Conventional Lotting option, permits a minimum lot size of 1.5 acres.

To achieve these purposes, the proposed Option 1 and Option 2 bulk and density requirements for the R–2 zone are as follows:

| | Option 1 | Option 2 |
| --- | --- | --- |
| Density | 65,340 sq. ft./DU max. gross density | 7 acres/DU |
| Lot Size Max./ Min. Lot Width | 1 acre 150 feet | NA |
| Lot Size Avg./ Min. Lot Width | 32,670 sq. ft. 115 feet | 7 acres 300 feet |
| Lot Size Min./ Min. Lot Width | ½ acre (21,780 sq.ft.) 100 feet | 3 acres 200 feet |
| Open Space: | 50% | No Common Open Space |
| Yards: Front Side Rear | 25 feet 10 feet (35 feet bet. bldgs.) 40 feet | See Text Below |
| Max. Building Coverage: | NA | NA |
| Max. Impervious Coverage: | 30% on each lot | 15% |
| Max. Building Height: | 35 feet | 35 feet |

The proposed yard regulations for Option 2 or Country Properties provided that front yards shall be 150 feet from the right-of-way of existing municipal roads and 40 feet from the right-of-way of new subdivision roads. The amendment proposed that rear yards should be at least 50 feet for principal buildings and 10 feet for most accessory buildings and side yards should be 25 feet. The

proposed ordinance also explained the manner in which density was to be determined for each option.

As can be readily discerned, the proposed amendment made material changes in the bulk and density requirements in the R–1 and R–2 residential zones. For new subdivisions, the ordinance as amended, expressed development preferences that effectively "down-zoned" these residential zones. The proposed ordinance, however, did not alter the permitted or conditional uses in either zone.

The Township Committee introduced the ordinance to amend the 2003 zoning ordinance on June 6, 2005, on first reading. It is undisputed that certified mail notice pursuant to *N.J.S.A.* 40:55D–62.1 was not provided prior to the first reading. Following the first reading, the Township Committee scheduled a second reading and a public hearing for June 20, 2005. At the public hearing, plaintiff Woolwich Landowners Association (WLA) questioned whether the proposed amendment had been referred to the Planning Board for review and comment. At the close of the public hearing, the Township Committee referred the proposed amendment to the Planning Board and tabled the amendment. On August 1, 2005, following referral to and approval by the Planning Board, the Township Committee adopted the amendments as originally proposed.

Plaintiff Robert James Pacilli Homes, L.L.C. (Pacilli), a residential developer with two major subdivision applications pending at the time the amendments to the zoning ordinance were adopted, filed a complaint in lieu of prerogative writs challenging the amended ordinance. In Count One, it asserted that *N.J.S.A.* 40:55D–62.1 required certified mail notice of the proposed amendments to all property owners and that the absence of such notice rendered the amended ordinance invalid. In Count Two, Pacilli alleged that the bulk standards for the Option 1 conservation clustering provision, specifically the "150–foot set back buffering requirement from any crop land or pasture land and a mandatory 300–foot buffer from preserved farmland," are arbitrary, capri-

cious and unreasonable because there is no rational distinction between unpreserved active farmland and preserved active farmland.

The WLA also filed a timely complaint in lieu of prerogative writs challenging the amended ordinance. In Count One, the WLA contended that the Township Committee's failure to provide notice of the proposed amendment was contrary to *N.J.S.A.* 40:55D–62.1. In Count Two, the WLA asserted that the Township Committee failed to properly refer the proposed amendment to the Planning Board. In Count Three, the WLA alleged that the amended ordinance is contrary to the Master Plan. In Count Four, it contended that the amendment is contrary to *N.J.S.A.* 40:55D–62 because the zoning regulations are not uniform throughout each district. Finally, in Count Five, the WLA alleged that the amendment is contrary to the Municipal Land Use Law (MLUL).

In the trial court, the parties focused on the notice issue. Pacilli and the WLA argued that the changes to the R–1, R–2 and R–3 zones were so substantial that the personal notice provision of *N.J.S.A.* 40:55D–62.1 was triggered. The Township responded that the amended ordinance did not change the permitted or conditional uses within any district and the amended ordinance cannot be considered a transfer of development rights ordinance; therefore, the notice required by section 62.1 was not necessary.

In an oral opinion, Judge Curio stated that the question of whether the amended ordinance effected a change in classification required a detailed analysis of the amendments. She noted that within all three residential districts, subzones or options were created, each with different bulk and density requirements. She also noted that the term "classification" is not defined in the MLUL. Therefore, "it is left to the Court's determination as to whether what is at work in this ordinance amounts to a change in the classification."

Judge Curio rejected the need for testimony from expert witnesses on the issue of whether the ordinance effects a change in

classification. The judge believed that an examination of the ordinance and an analysis of the scope of the changes was sufficient to resolve the issue. The judge then held that the notice of the proposed amendment was insufficient and the amended ordinance was invalid. Judge Curio stated:

> If we look at the ordinance and conclude, as I have, that there are if not radical at least significant changes to the zoning scheme, then it would seem appropriate that all of the safeguards of due process be brought to bear. So that the higher standard of notice required for the change in classification should be adhered to, that the persons whose property rights and interests are affected by these changes, and the citizenry at large ought to be given the opportunity for a fair hearing.

The judge certified the March 7, 2006 order invalidating Ordinance 2005–25 as final pursuant to *Rule* 4:42–2 and stayed the order pending appeal.

On appeal, the Township argues that the notice provided by it of the proposed amendments to its zoning ordinance met all statutory requirements. Alternatively, it contends that the issue of the nature and scope of the changes could not be resolved without testimony.

The MLUL recognizes that the development of property in a municipality affects the interests of property owners in that municipality and in adjoining municipalities. *N.J.S.A.* 40:55D–2, –62.1; *N.Y. SMSA Ltd. P'ship v. Twp. Council of Edison,* 382 *N.J.Super.* 541, 548–49, 889 *A.*2d 1129 (App.Div.2006). Thus, any person who proposes to develop property for which certain approvals are required must provide notice to neighboring property owners and other designated entities. *N.J.S.A.* 40:55D–12. Generally, the notice must be given to property owners within 200 feet of the property subject to development. *Ibid.* A governing body is also required to provide notice to property owners when it undertakes a periodic review of its master plan, *N.J.S.A.* 40:55D–13, and to all property owners within a district when a governing body proposes a classification or boundary change. *N.J.S.A.* 40:55D–62.1; *see also N.J.S.A.* 40:55D–63. In this appeal we are concerned only with section 62.1.

*N.J.S.A.* 40:55D–62.1 directs that all property owners within a zoning district shall receive personal notice if the municipal body seeks to change the classification or boundaries of a zoning district. The statute provides in pertinent part:

> Notice of a hearing on an amendment to the zoning ordinance proposing a change to the classification or boundaries of a zoning district, exclusive of classification or boundary changes recommended in a periodic general reexamination of the master plan by the planning board pursuant to [*N.J.S.A.* 40:55D–89], shall be given at least 10 days prior to the hearing by the municipal clerk to the owners of all real property as shown on the current tax duplicates, located, in the case of a classification change, within the district and within the State within 200 feet in all directions of the boundaries of the district, and located, in the case of a boundary change, in the State within 200 feet in all directions of the proposed new boundaries of the district which is the subject of the hearing.
>
> . . . .
>
> A notice pursuant to this section shall state the date, time and place of the hearing, the nature of the matter to be considered and an identification of the affected zoning districts and proposed boundary changes, if any, by street names, common names or other identifiable landmarks, and by reference to lot and block numbers as shown on the current tax duplicate in the municipal tax assessor's office.
>
> Notice shall be given by: (1) serving a copy thereof on the property owner as shown on the said current tax duplicate, or his agent in charge of the property, or (2) mailing a copy thereof by certified mail and regular mail to the property owner at his address as shown on the said current tax duplicate.
>
> [*N.J.S.A.* 40:55D–62.1.]

Except for these circumstances, notice is ordinarily confined to those property owners within 200 feet of the property that is the subject of any zoning or planning application. *N.J.S.A.* 40:55D–12.

It is undisputed that the amendments to the R–1, R–2, and R–3 zones do not effect the boundaries of those zoning districts. The issue is whether the changes effect the classification of any zoning district.

 Unlike many terms found in the MLUL, "classification" is not defined. "In the absence of any explicit indication of special meaning, words of a statute are to be given their ordinary and well understood meaning." *Levin v. Twp. of Parsippany–Troy Hills,* 82 *N.J.* 174, 182, 411 *A.*2d 704 (1980) (citing *Fahey v. City of*

*Jersey City,* 52 *N.J.* 103, 107, 244 *A.*2d 97 (1968)). Classification is ordinarily defined as "a systematic arrangement in groups or categories according to established criteria." *Merriam Webster's Collegiate Dictionary,* 211 (10th ed.1996). In the context of land use and regulation, classification is typically synonymous with the broad general uses permitted in a designated area, such as residential, commercial, retail and industrial, and extends to sub-categories within those general categories, such as single-family residential, highway commercial, and neighborhood retail. Generally, the sub-categories of uses are distinguished by the intensity of the permitted use. This meaning is also consistent with the current approach to and purpose of zoning, which consists of the creation of districts or zones and the designation of the use or uses permitted or prohibited in the district or zone. 2 Robert M. Anderson, *American Law of Zoning* § 9.02 (4th ed.1996); 8 Eugene McQuillin, *Municipal Corporations* § 25.86 (3d ed.2000).

An examination of the MLUL also provides guidance in discerning the meaning of this term. The MLUL authorizes the governing body to "adopt or amend a zoning ordinance relating to the nature and extent of the uses of land and of buildings and structures thereon." *N.J.S.A.* 40:55D–62. This section also directs that "[t]he regulations in the zoning ordinance shall be uniform throughout each district for each class or kind of buildings or other structure or uses of land. . . ." *Ibid. N.J.S.A.* 40:55D–65a also authorizes a zoning ordinance to limit and restrict buildings and structures "according to their type and the nature and extent of their use," as well as to "regulate the nature and extent of the use of land for trade, industry, residence, open space or other purposes." *See also N.J.S.A.* 40:55D–3 (definition of conditional use as "a use permitted in a particular district only upon a showing that such use in a specified location will comply with the conditions and standards for the location or operation of such use as contained in the zoning ordinance. . . .").

This examination of the MLUL confirms that in its most general sense, classification refers to the use permitted in a zoning

district, such as residential, commercial or industrial, as well as sub-categories within the broader uses, such as single-family residential and high-density residential, highway commercial and neighborhood commercial, and highway retail and neighborhood retail. We also encounter uses that may be permitted under certain conditions within a generally designated category. A change in any of these broad categories and sub-categories has the capacity to fundamentally alter the character of a zoning district.

Our research also reveals that the term "classification," at least for purposes of section 62.1 and section 63,[3] has been assumed to include changes to the density, bulk and height standards and conditions applicable to designated uses. For example, in *Toll Brothers, Inc. v. West Windsor Township*, 312 *N.J.Super.* 540, 551, 712 *A.*2d 266 (App.Div.), *certif. denied*, 157 *N.J.* 543, 724 *A.*2d 803 (1998), the township amended its ordinance to decrease the allowable density in certain residential districts by increasing minimum lot size. In the course of the amendment process, the township provided personal notice as required by *N.J.S.A.* 40:55D–62.1 to all property owners in the affected districts. *Ibid.* Similarly, in *Mountain Hill, LLC v. Middletown Township*, 353 *N.J.Super.* 57, 60–61, 801 *A.*2d 412 (App.Div.), *certif. denied*, 175 *N.J.* 78, 812 *A.*2d 1110 (2002), the governing body provided personal notice to all property owners in the district when it introduced an amendment seeking to "down zone" the existing planned development district. *Cf. Gallo v. Mayor & Twp. Council of Lawrence Twp.*, 328 *N.J.Super.* 117, 121, 126–27, 744 *A.*2d 1219 (App.Div.2000) (personal notice not required for amendment adding sub-zones with different density requirements in a single-family residential zone because the amendment was the product of a periodic master plan review).

---

[3] *N.J.S.A.* 40:55D–63 requires personal notice of the hearing on an amendment to a zoning ordinance that proposes a change in classification or boundary of a zoning district.

■ These cases are instructive for two reasons. First, they belie the notion that the notice demanded by plaintiffs is unprecedented. Second, they suggest that others charged with zoning and planning responsibilities recognize that changes in bulk and density requirements within a zone can effect a substantive change in future development within a zone without any alteration to the label applied to the zone. In other words, the type of notice to be provided on the occasion of a proposed amendment to a zoning ordinance should focus on the substantive effect of the amendment rather than the appellation given to the zone.

Here, the scope of the changes to the R-1 zone affected by the 2005 amendment is illustrated simply by focusing on the maximum gross density per acre feature of the R-1 zone. The 2003 ordinance generally allowed a minimum lot size of two acres and a maximum density of .5 units per acre under certain circumstances. According to the 2005 amendment, the maximum gross density is one unit per two acres under Option 1 and one unit per ten acres under Option 2. Although continuing the "conventional" R-1 zoning with its associated bulk and density requirements, the 2005 amendment expresses a preference for development pursuant to Option 1 or Option 2. This change within the R-1 classification effects a fundamental alteration of the character of this zoning district. One dwelling unit for every ten acres, as encouraged by Option 2, transforms a zoning district of generous lots to one of manorial proportions. The changes in the R-2 zone are as sweeping in character.

■ The Township argues that a notice requirement that depends on the substantiality of a change injects an element of uncertainty into the municipal zoning and planning process that is contrary to the general purpose of the MLUL and specifically contrary to the express language of *N.J.S.A.* 40:55D–62.1. Admittedly, one of the purposes of the MLUL is to simplify and standardize procedures by local boards. *N.Y. SMSA Ltd. P'ship, supra,* 382 *N.J.Super.* at 548, 889 *A.2d* 1129. We should be extremely hesitant to adopt a rule that leaves municipal governing

bodies, residents and other affected parties to guess what constitutes a substantial change and what notice may or may not be required. As noted, however, the test is not the number of changes but the substance of the changes. We also need not explore the limits of this rule for by any measure, the changes effected within the R–1 and R–2 zones dramatically altered the intensity of the residential use within each zone and promised to affect the character of the future development in both zones. Thus, in the circumstances of this case, the Township Committee was required to follow the notice requirements of *N.J.S.A.* 40:55D–62.1. We, therefore, affirm the order declaring Woolwich Ordinance 2005–25 invalid.

Affirmed.