37 A.3d 1143 (2011)
424 N.J. Super. 337
ROCKAWAY SHOPRITE ASSOCIATES, INC., Plaintiff-Appellant,
v.
CITY OF LINDEN and Council of the City of Linden, Defendants-Respondents, and
Linden Development, LLC, Defendant/Intervenor-Respondent.
Docket No. A-1345-10T4
Superior Court of New Jersey, Appellate Division.
Argued October 3, 2011.
Decided November 14, 2011.
*1144 Ronald S. Gasiorowski argued the cause for appellant (Gasiorowski & Holobinko, Red Bank, attorneys; Mr. Gasiorowski, on the brief).
John G. Hudak, Municipal Attorney, argued the cause for respondents City of Linden and Council of the City of Linden.
Daniel L. Schmutter argued the cause for respondent Linden Development, LLC (Farer Fersko, attorneys; Mr. Schmutter and John H. Hague, on the brief).
Before Judges PARRILLO, ALVAREZ and SKILLMAN.
The opinion of the court was delivered by
PARRILLO, P.J.A.D.
At issue is the sufficiency of the published notice for a public hearing on the adoption of an ordinance and an amendatory ordinance that rezoned 47.5 acres of the former General Motors (GM) assembly plant property in Linden. Plaintiff, who operates a supermarket near the site where intervenor, Linden Development LLC, has proposed to build a Walmart and other stores, filed suit against the City of Linden and City Council seeking to void these ordinances, in part because the notices did not comply with N.J.S.A. 40:49-2.1. The Law Division disagreed and dismissed plaintiff's complaint. For the following reasons, we reverse.
The August 2002 City Master Plan listed the former GM site as H-I heavy industrial and L-I light industrial use in accordance with Linden's then zoning ordinance. The entire property is approximately 105 acres in size.
Linden Development, an affiliate of a commercial real estate developer that specializes in redeveloping industrial sites, purchased the GM site in December 2007 with the intention of creating a combination of retail and commercial uses, multi-family residential use, and industrial and warehouse uses. Specifically, the plan calls for a change in zoning for forty-five acres fronting Route 1 and 9 to allow retail and commercial uses, with Walmart and Lowe's as two of the prospective tenants, and 2.5 acres to allow multi-unit residential development. The remainder of the GM site, located in the rear westerly portion of the property, is intended to be developed with new industrial and warehouse buildings.
Having acquired the GM site without the necessary zoning ordinances or site plan approvals in place, Linden Development requested that the City effectuate zoning changes as needed for the planned development. This request for a change in zoning actually coincided with the time for the Planning Board (Board) to conduct its six year periodic re-examination of the City Master Plan, as required by N.J.S.A. 40:55D-89, due in January 2009.
To this end, a proposed zone delineation map and a sketch with proposed zone line changes were prepared. On June 13, 2008, Linden Development filed an application for major subdivision approval with the Board to consolidate certain lots and establish new lots within the GM site to correspond to the anticipated dividing line between commercial and industrial zones. On July 8, 2008, the Board approved the major subdivision application.
In November 2008, the Board's planning consultant, T & M Associates, prepared and delivered to the Board a Master Plan Reexamination Report (Report) and a separate *1145 Master Plan Land Use Element Amendment (Amendment), recommending reclassification of the land use for the GM site and creation of a new zoning district for the forty-five acres fronting Routes 1 and 9 called the "planned commercial district" to accommodate a mix of commercial and retail uses thereon. Following notice published in the Home News Tribune, the Board convened a special meeting on November 25, 2008, after which the Report and Amendment were approved by resolution of December 9, 2008, and referred to City Council (Council).
To implement the zoning proposed in the Report and Amendment, on December 9, 2008, Council introduced and passed on first reading Ordinance 52-71, which planning consultant Richard Cramer of T & M Associates explained:
revise[s] the zoning of the GM site to permit the redevelopment of approximately 44 acres of the site for a mix of retail, commercial, and related uses based on an overall plan for development. The area to be zoned for the planned commercial development extends approximately 1,000 feet from Route 1 & 9. In addition, a section of the GM site south of Pleasant Street will be zoned for age-restricted residential development.
The zoning of the remainder of the GM site will continue unchanged as part of the HI Heavy Industrial Zone.
Council then scheduled the proposed ordinance for a hearing at its December 30, 2008 meeting and referred it to the Board for review pursuant to N.J.S.A. 40:55D-64. On December 16, 2008, the Board concluded that Ordinance 52-71 was consistent with the City's Master Plan, and proposed two minor technical changes.
On December 18, 2008, the City published notice of Ordinance 52-71 for public hearing and possible adoption in the local newspaper, the Union County LocalSource. The notice read in pertinent part:
# 52-71
AN ORDINANCE TO AMEND AND SUPPLEMENT CHAPTER XXXI, ZONING, OF AN ORDINANCE ENTITLED "AN ORDINANCE ADOPTING AND ENACTING THE REVISED GENERAL ORDINANCES OF THE CITY OF LINDEN, 1999," PASSED NOVEMBER 23, 1999 AND APPROVED NOVEMBER 24, 1999 AND AS AMENDED AND SUPPLEMENTED
AMEND CHAPTER XXXI, ZONING, BLOCK 469, LOT 38.1, BLOCK 470, LOTS 9.1, 9.2 AND 9.3 AND BLOCK 471, LOT 7.1, DEVELOPMENT REGULATIONS FOR THE USE OF THE SITE OF THE FORMER GENERAL MOTORS MANUFACTURING FACILITY.
The complete ordinance is on file in the City Clerk's Office, City Hall, 301 North Wood Avenue, Linden, NJ 07036.
The City also sent notice by certified mail to property owners within 200 feet of the property, including plaintiff. The mailed notice stated:
PLEASE TAKE NOTICE that on Tuesday, December 30, 2008 the City Council of the City of Linden will hold a Public Hearing at the Linden City Hall, 301 N. Wood Avenue, Linden, NJ at 7:00 p.m., or as soon thereafter that this matter can be reached, in the Council Chambers on a proposed Ordinance (Ordinance # 52-71) Amending the Zoning Ordinance of the City of Linden relative to the site of the former General Motor[s] manufacturing facility, being Lot 38.1 in Block 469, Lots 9.1, 9.2 and 9.3 in Block 470, and Lot 7.1 in Block 471, Linden, New Jersey.
On December 30, 2008, Council heard comments from the public. Plaintiff was *1146 represented at the hearing by Gordon Gemma, a New Jersey licensed professional planner and attorney, who voiced no objection to the ordinance. Council unanimously passed Ordinance 52-71 without further amendment.
As noted, Ordinance 52-71 created two new zoning districts, the Planned Commercial Development (PCD) district and the Multi-Family Residential Development (R-4) district. Principal permitted uses are retail sale of goods and services, restaurants, hotels, banks, finance offices, real estate offices, insurance offices, automobile showrooms and new car sales lots, professional and business offices, indoor recreation facilities, and health clubs. Under area and bulk regulations for the PCD district, Ordinance 52-71 requires a tract size of a minimum of thirty contiguous acres, with a minimum street frontage of 1800 feet along Route 1 and 9. The Ordinance sets forth requirements for individual development, building height for each type of permitted use, façade treatment, landscaping and screening, parking and loading, signage, sidewalks, street furniture, lighting, and green design.
After its adoption, the City determined that certain limited revisions were necessary as to the PCD zone, and introduced a new Ordinance 53-10, to enact those revisions.[1] A notice of public hearing was published once in the Union County LocalSource, on January 29, 2009. The notice, which did not identify the property affected by the proposed ordinance simply read:
# 53-10
AN ORDINANCE TO AMEND ORDINANCE NO. 52-71 ENTITLED "AN ORDINANCE TO AMEND AND SUPPLEMENT CHAPTER XXXI, ZONING", OF AN ORDINANCE ENTITLED "AN ORDINANCE ADOPTING AND ENACTING REVISED GENERAL ORDINANCES OF THE CITY OF LINDEN, 1999," PASSED NOVEMBER 23, 1999 AND APPROVED NOVEMBER 24, 1999 AND AS AMENDED AND SUPPLEMENTED
Amendments to the City of Linden Master Plan
The complete ordinance is on file in the City Clerk's Office, City Hall, 301 North Wood Avenue, Linden, NJ 07036.
The mailed notice, sent to property owners within 200 feet of the property, however, did identify the property by block and lot number and as "the former General Motor[s] manufacturing facility." On February 17, 2009, Council considered Ordinance 53-10, which would amend Ordinance 52-71, and unanimously passed it.
Plaintiff filed a two-count complaint against the City and Council (hereafter "defendants" at times) seeking reversal of the adoption of the ordinances on both procedural and substantive grounds. As to the former, plaintiff claimed improper notice. As to the latter, plaintiff alleged that the PCD ordinance and district failed to comply with the governing PCD requirements in the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163. Linden Development was allowed to intervene and answered, along with the City and Council. Following discovery, plaintiff moved for summary judgment on its deficient public notice claim. The Law Division denied the motion, concluding that the notice was sufficient under N.J.S.A. 40:49-2.1 and set the matter for trial on plaintiff's substantive claim. At the close of evidence, the judge determined that the *1147 ordinances were valid as conventional zoning and dismissed plaintiff's complaint with prejudice.
This appeal follows.

I
In support of its procedural challenge, plaintiff maintains that the notice should have identified the entirely new zones being created and set forth detailed standards governing their use, including that the PCD zone allowed for a mix of retail, restaurant, hotel, offices, automobile showrooms, and recreation uses, and that the R4 multi-family residential zone allowed for age-restricted multi-family residential buildings to a height of four stories at a density of thirty-five units per acre. Defendants and intervenor, on the other hand, argue that it is sufficient if the notice, as here, identifies the property by common name and by block and lot number, and informs the public that the permitted use of the property would change. The Law Division judge concurred with the latter view, concluding that the public notice conformed to statutory requirements.
Of course, we are not bound by the trial court's interpretation of the law, Manalapan Realty, L.P. v. Township Committee of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995), and review de novo questions regarding the adequacy of the notice, Pond Run Watershed Association v. Township of Hamilton Zoning Board of Adjustment, 397 N.J.Super. 335, 350, 937 A.2d 334 (App.Div.2008). While we do not wholly subscribe to plaintiff's view as to the amount of detail needed to comply with the statute, we nevertheless agree that the notice in this case was legally deficient in apprising the public of the substantive changes to the municipality's zoning effected by the proposed ordinance.
N.J.S.A. 40:49-2.1 provides in pertinent part:
In the case of any ordinance adopted pursuant to the "Municipal Land Use Law," P.L. 1975, c. 291 (C. 40:55D-1 et seq.), including any amendments or supplements thereto, or revisions or codifications thereof, which is in length, six or more octavo pages of ordinary print, the governing body of any municipality may, notwithstanding the provisions of R.S. 40:49-2, satisfy the newspaper publication requirements for the introduction and passage of such ordinance in the following manner:
a. The publication of a notice citing such proposed ordinance by title, giving a brief summary of the main objectives or provisions of the ordinance, stating that copies are on file for public examination and acquisition at the office of the municipal clerk, and setting forth the time and place for the further consideration of the proposed ordinance;
. . . .
If any amendment be adopted to any such proposed ordinance substantially altering the substance of the proposed ordinance, there shall be caused to be published a notice of the title of the ordinance, the introduction and time and place that the amended ordinance will be further considered and a summary of the objectives or provisions of the amendment or amendments, which notice shall be published at least 2 days prior to the time so fixed therefor in accordance with subsection c. of R.S. 40:49-2. Copies of the amended ordinance shall be on file and available, for public examination and duplication, in the office of the municipal clerk, until final action is taken on said ordinance. If said ordinance is again amended, the same publication requirements herein set forth for amended ordinances shall be followed.
[(emphasis added).]
*1148 In lieu of setting forth the ordinance in full, as required by the predecessor Planning Act of 1953, N.J.S.A. 40:55-34, the Legislature in 1977 enacted N.J.S.A. 40:49-2.1, allowing for publication by summary in the case of ordinances of six or more pages in length. Consequently, prior to 1997, there were few cases dealing with adequacy of notice because the ordinances were published in full. See, e.g., McKann v. Irvington, 133 N.J.L. 575, 576, 45 A.2d 494 (E. & A.1946) (dealing with the incorporation by reference of maps or charts unsuitable or impractical to publish). Since then, however, courts in New Jersey have consistently required that the "summary" being substituted for the full text of the ordinance apprise interested readers throughout the municipality of the zoning changes contemplated as well as their nature and import.
In Wolf v. Mayor & Borough Council of Shrewsbury, 182 N.J.Super. 289, 292-96, 440 A.2d 1150 (App.Div.1981), certif. denied, 89 N.J. 440, 446 A.2d 162 (1982), the plaintiff asserted that the notices in a local newspaper did not constitute a brief summary of the major objective or provisions of the amendment of the zoning ordinance as mandated by N.J.S.A. 40:49-2.1. The notice was titled, "An ordinance to amend the code of the Borough of Shrewsbury by amending Chapter 94Zoning," and stated that "[t]he main objectives of these revisions are to comply with the requirements of said Municipal Land Use Law by conforming to the provisions of the Master Plan of the Borough of Shrewsbury." Id. at 292, 440 A.2d 1150. Subsequent amendments to the ordinance had identical notices. Ibid. In invalidating the rezoning ordinance, we concluded that the notices did not constitute a brief summary of the main objectives or provisions of the proposed amendment, id. at 295-96, 440 A.2d 1150, because they did not sufficiently alert the reader to the nature and importance of the proposed changes to the zone. Id. at 296, 440 A.2d 1150. The mere reference to the objective to comply with the Master Plan and the MLUL did not satisfy the statute. Ibid. We reasoned:
The notice published in the Daily Register did not constitute a brief summary of the main objectives or provisions of proposed amendment. Moreover, it was not sufficient to alert a reasonably intelligent reader as to the nature and import of the substantial changes in the zone plan proposed by the borough. A notice of a proposed change in the zoning laws must be reasonably sufficient and adequate to inform the public of the essence and scope of the proposed changes.

[Id. at 295-96, 440 A.2d 1150 (emphasis added).]
In Cotler v. Township of Pilesgrove, 393 N.J.Super. 377, 386, 923 A.2d 338 (App. Div.2007), we reviewed a notice that described the purpose of the ordinance to "revise and supplement zoning and land use regulation, and submissions for applications for development pursuant to Municipal Land Use Law, including revisions to the zoning maps, zoning districts, zoning district regulations, and development application checklists." No further information as to the nature or extent of the proposed changes was provided. We concluded that although the notice was more informative than in Wolf, it still did not include sufficient information to alert property owners of the possibility that the proposed amendment may affect the zoning of their properties or nearby properties. Id. at 386-87, 923 A.2d 338. Rather, the notice must identify the subject property, and the notice must inform the reader that the ordinance would result in substantive changes to the municipality's zoning. Ibid. In specifying the information that should have been referenced for an adequate notice, we explained that the notice "could *1149 have stated that the amendment would change the previous boundary lines of the municipality's zoning districts and the allowable uses and densities in various zones and would create new zones that did not exist under the prior ordinance, without undertaking to describe all the details of those changes." Id. at 387, 923 A.2d 338.
Thus, New Jersey requires at a minimum that published notice of a zoning ordinance creating new zones and uses applicable to an area identify and briefly describe those new zones and uses. This principle comports with court decisions of sister states interpreting similar notice statutes requiring that public notices contain a "brief summary" of the zoning ordinance's major changes and provisions. See, e.g., Gas Mart Corp. v. Bd. of Supervisors, 269 Va. 334, 611 S.E.2d 340, 346 (2005) (title to notices of public hearing on amendments to zoning ordinance failed to satisfy statutory requirement of "descriptive summary"); Bedford Residents Grp. v. Town of Bedford, 130 N.H. 632, 547 A.2d 225, 229 (1988) (notice must "contain enough essential information about the scope of the proposed changes to alert interested parties that such changes were under consideration"); Specht v. Page, 128 Ariz. 593, 627 P.2d 1091, 1095 (App.1981) (notice requires a general explanation of the matter to be considered, including a general description of the area affected; notice that advises of hearing on "general zoning ordinance applicable to all uses of land," and did not include proposed zoning classifications, invalid); Valianatos v. Zoning Bd. of Richmond Twp., 766 A.2d 903, 905-06 (Pa.Commw.Ct.2001) (notice was "ambiguous" as to whether ordinance would be enacted on the published meeting date and its summary did not adequately put the general public on notice that amended ordinance would greatly decrease the value of some property); see also 2 E. Yokley, Zoning Law and Practice § 11-7 at 11-48 to 11-54 (2001 Mac Gregor revision). These cases have all followed the well-recognized principle, enunciated in 101A C.J.S. Zoning & Land Planning § 6 (1979):
The notice required by statute must reasonably apprise the public or parties interested of the essence of the regulations to be adopted, that is, the changes to be made. The notice required must be clear and unambiguous and must be readily intelligible to the average citizen. It must not be overly general or misleading. In other words, the notice must unambiguously set forth the information which would give adequate warning to all persons whose rights may be adversely affected by any action of the zoning entity so that they may appear and have an opportunity to be heard.
Also instructive are cases in which we have reviewed notices of public hearings in the somewhat analogous context of applications for development. Such notices are governed by N.J.S.A. 40:55D-11, which, admittedly, sets different content standards. Unlike an ordinance proposal, a site plan application addresses a specific development that can be described by use and size. Yet, both N.J.S.A. 40:49-2.1 and N.J.S.A. 40:55D-11 share a commonality of purpose, namely, to provide sufficient detail of what is projected to inform the interested public whether to participate or object. In that respect, we discern no meaningful difference between the municipality's exercise of its quasi-judicial power over proposed development applications and its legislative power to enact zoning ordinances to regulate the use of land by local ordinance.
In Perlmart of Lacey, Inc. v. Lacey Township Planning Board, 295 N.J.Super. 234, 236-37, 684 A.2d 1005 (App.Div.1996), developers applied for site plan, variance and conditional use approval for a K-Mart shopping center. N.J.S.A. 40:55D-11 requires *1150 the notice specify "the nature of the matters to be considered and . . . an identification of the property proposed for the development by street address. . . ." The notice in Perlmart, however, while informing "the public that certain variances and minor and major site plan approvals were being sought `for the creation of commercial lots' in a conventional zone," did not tell the public of the nature of that use, i.e., a conditional use K-Mart shopping center. 295 N.J.Super. at 237, 684 A.2d 1005. We concluded that the notice's failure to identify the proposed use as a conditional use shopping center rendered it legally "deficient." Id. at 241, 684 A.2d 1005. We reasoned that the notice should provide a "common sense description of the nature of the application, such that the ordinary layperson could understand its potential impact upon him or her." Id. at 239, 684 A.2d 1005. To be sure, the notice need not be "exhaustive" to satisfy this standard and we specifically rejected contentions that the MLUL required notice that a conditional use approval was sought and that specified all of the particular variances required. Id. at 237 n. 3, 684 A.2d 1005. Yet we expressly held that to adequately inform, the notice must give "an accurate description of what the property will be used for under the application" rather than rely upon references to technical zoning terms for that use. Id. at 238-39, 684 A.2d 1005; see also Shakoor Supermarkets, Inc. v. Old Bridge Twp. Planning Bd., 420 N.J.Super. 193, 19 A.3d 1038 (App.Div.2011).
In Pond Run Watershed Association v. Township of Hamilton Zoning Board, 397 N.J.Super. 335, 937 A.2d 334 (App.Div. 2008), a public notice under N.J.S.A. 40:55D-11 advised the developer's application was for a "use variance for two non-permitted uses . . . age-restricted rental units and retail/office units" together with various variances. Id. at 346, 937 A.2d 334. We found the notice defective as its generic allusion to "retail/office" units did not mention the proposed 168-seat, 5,000 square foot restaurant, which would have been of heightened concern to neighbors and other members of the public, particularly as to issues of traffic, parking, noise and the possible consumption of alcohol on site. Id. at 351-52, 937 A.2d 334. We emphasized that the critical element of a proper public notice "has consistently been found to be an accurate description of what the property will be used for. . . ." Id. at 352, 937 A.2d 334; see also Twp. of Stafford v. Stafford Twp. Zoning Bd., 154 N.J. 62, 79, 711 A.2d 282 (1998).
Here, instead of the "brief summary of the [ordinance's] main objectives and provisions" clearly and plainly mandated by the statute, the public notice merely advised that the zoning is being amended as to the properties identified by common name and by lot and block number. This general, standardized language provides no real notice apprising the public of what exactly is being proposed. This, despite the fact that the proposed rezoning ordinance would effect a substantial and fundamental alteration in the character of the district by creating entirely new zones with different uses. Indeed, each of the changes to be effectuated by Ordinance 52-71 that Cotler noted should have been referenced for an adequate noticeincluding the changing of previous zone boundary lines, changes in allowable uses and densities in the area rezoned, and the creation of new zones that previously did not existwere totally absent from the public notice in this case. Beyond simply advising that the ordinance proposed to amend the zoning at the GM site, the notice, at a minimum, should have identified and summarized the new zones and new uses. While the published notice at most alerted the public that some type of zoning amendment was being considered regarding *1151 the GM site, nothing therein informed interested persons of the nature or extent of the change or whether it was consequential enough to warrant their attendance at, and participation in, the ensuing public hearing. Simply stated, notice of a proposed amendment to a zoning ordinance "should focus on the substantive effect of the amendment. . . ." Robert James Pacilli Homes v. Twp. of Woolwich, 394 N.J.Super. 319, 332, 926 A.2d 412 (App.Div.2007). The generic notice in this case fails to satisfy this standard.
Nor was this legally deficient notice remedied by the subsequent certified mailing to nearby property owners, irrespective of whether such additional notice was a prerequisite for the zoning changes proposed under N.J.S.A. 40:55D-62.1. Indeed, the mailed notice provided no further information and failed to meet the requirement of either N.J.S.A. 40:49-2.1 or N.J.S.A. 40:55D-62.1.[2]
The notice of amendatory zoning ordinance, Ordinance 53-10, published on January 29, 2009, fares no better. In fact, this notice even failed to identify the property involved, although the mailed notice that followed described the area by block and lot number. Even the Law Division judge expressed concern over this notice, although she ultimately overlooked the patent defect because the hearing only dealt with issues of height restriction in Ordinance 52-71. However, because the notice for Ordinance 52-71 was also deficient, for reasons already noted, the statement in the published notice that Ordinance 53-10 sought to amend Ordinance 52-71 would not alert the public that the amendment involved the former GM site, much less the nature of the zoning changes it was proposing. For all these reasons, then, the notices of the public hearing as to both Ordinance 52-71 and 53-10 were fatally defective, rendering the resultant ordinances invalid.
Defendants and intervenor nevertheless contend that because plaintiff's representative attended the public hearing on December 30, 2008, and did not object to the lack of proper notice, plaintiff "waived" its right to challenge the ordinances on that basis. We disagree.
In Township of Stafford v. Stafford Township Zoning Board of Adjustment, 154 N.J. 62, 711 A.2d 282 (1998), the Court explained that questions regarding the adequacy of the notice for a hearing on a nonconforming use petition are addressed to the zoning board's jurisdiction:
"[T]he giving of statutory notice of hearing is a jurisdictional requirement, and unless notice is given as required by statute the board lacks power to hear or consider an application even if the subject matter is within its statutory power." [William M. Cox,] New Jersey Zoning [and Land Use Administration], § 4-2.1 [(1967)]; see also Perlmart[,] [supra, 295 N.J.Super. at 236, 684 A.2d 1005] (finding that "proper notice is a jurisdictional prerequisite, and a failure to so provide is fatal to the Planning Board's approval").
[Id. at 79, 711 A.2d 282.]
The Court explained that there was an arrogation of authority:

*1152 Petitioner was required to provide Section 12 notice to all landowners within 200 feet of Lot 13. N.J.S.A. 40:55D-12. His failure to do so removes the Zoning Board's jurisdiction to hear his application, even though the subject matter, i.e., nonconforming use certification, was within its statutory power. Therefore, the Board's action in hearing petitioner's application falls outside the ambit of its authority.
[Ibid.]
More recently, in Shakoor Supermarkets, Inc., supra, we addressed public notice of an application for site plan approval and cited to Stafford, supra, 154 N.J. at 79, 711 A.2d 282, and Perlmart, supra, 295 N.J.Super. at 237, 684 A.2d 1005, stating: "Failure to provide proper notice deprives a municipal zoning board of jurisdiction and renders null any subsequent action." 420 N.J.Super. at 201, 19 A.3d 1038.
The general rule then, at least with respect to development applications, is that strict compliance with statutory notice requirements is mandatory and jurisdictional, and non-conformity renders the governing body's resultant action a nullity. While we have uncovered no New Jersey authority directly on point addressing notices of amendments to zoning ordinances, the rationale of the aforecited cases is equally persuasive here. Cf. Mulligan v. City of New Brunswick, 83 N.J.Super. 185, 191, 199 A.2d 82 (Law Div.1964). Indeed, when a municipality exercises its power to plan or to zone, that municipal authority must be exercised in strict conformity with the MLUL. William M. Cox & Stuart R. Koenig, New Jersey Zoning and Land Use Administration, § 1.1 at 2-3 (2011). While amendments to zoning ordinances and reclassifications of zoning districts are considered legislative in nature and enjoy a presumption of validity, nevertheless the process of enactment is statutory and "courts have been strict in compelling compliance with the statutory procedures[.]" Patrick J. Rohan, 8-52 Zoning and Land Use Controls § 52.08[2] (2011) (footnotes omitted). When the notice is inadequate, "the conclusion is that failure to give adequate notice of pending legislation is generally fatal to the subsequent legislative enactment." Ibid. "The result of a failure to comply with the procedural requirements of zoning legislation generally is that the proposed zoning or rezoning action is deemed invalid and, therefore, void or a nullity." Id. at 38-23 (footnote omitted); accord 2 E. Yokley, Zoning Law and Practice, supra, § 11-7 at 11-48 ("When local governments amend zoning ordinances, they must comply with the enabling statute. Failure to do so is fatal to the ordinance's validity."); Anderson's American Law of Zoning, § 4.13 at 275 (K. Young rev. 4th ed.1995) (footnotes omitted) ("As is true of procedural requirements generally, the requirements for publication, service, and posting are mandatory; failure substantially to comply with them results in an invalid ordinance."); O. Reynolds, Handbook of Local Government Law § 120 at 462 (2001) (footnote omitted) ("These requirements are . . . mandatory; and a zoning ordinance passed without the required and properly noticed hearing will be void.").
While a few jurisdictions have found a "waiver" of defective notice if the landowner appeared, participated and voiced objection to the proposed zoning ordinance, see, e.g., Schumacher v. Town of Jupiter, 643 So.2d 8, 9 (Fla.Dist.Ct.App.1994), review denied, 654 So.2d 919 (Fla.1995); Hansen v. City of Norfolk, 201 Neb. 352, 267 N.W.2d 537 (1978), others, in reaching a contrary result, have predicated their invalidating action "on the premise that the public in general has a right to know that quasi-legislative action is imminent with jurisdictions varying only on the necessity of clarity of the notice." Rohan, 8-52 Zoning *1153 and Land Use Controls, supra, § 52.08[2] (footnotes omitted) (emphasis added).
For instance, in Chang v. Fairfax County Board of Supervisors, 26 Va. Cir. 456 (Va.Cir.Ct.1988), the court addressed notice for a hearing on a zoning change from commercial to residential:
A rezoning is a different matter. The purpose of the notice provisions is to attract specific persons to the hearing, i.e., the landowner of the parcel affected by the zoning change and his adjacent neighbors. Since the decision of the Board is deemed to affect not only the landholder but his neighbors also, they are as important to the process as the landowner directly affected. The defect in notice in these cases is jurisdictional and is not waived by the appearance of some interested parties.
[Id. at 458.]
Addressing the validity of zoning ordinances, the Arizona Supreme Court held that where a jurisdictional notice is required to be given in a certain manner, any means other than that prescribed is ineffective. Hart v. Bayless Investment & Trading Co., 86 Ariz. 379, 346 P.2d 1101 (1959), involved an attack on the validity of the basic ordinances enacted by the Maricopa County Board of Supervisors establishing zoning for all unincorporated areas of Maricopa County. Id. at 1108. After finding that notice of the required public hearings before both the Zoning Commission and the Board of Supervisors had not been given in compliance with statutory requirements, and that one of the required public hearings had not even been held, the court proceeded to determine "whether these procedural defects [were] of such gravity that the ordinances must be invalidated." Id. at 1109. Giving due deference to the legislative process, the court noted that the ordinances would not be set aside unless the defects shown were jurisdictional in nature, and, applying that standard, held the ordinances invalid, stating:
In other jurisdictions, courts which have been confronted with this issue have found, almost without exception, that compliance with statutory requirements as to hearing and notice is jurisdictional and that ordinances which have not been adopted in conformity with the enabling Act are void.
[Id. at 1109-10 (internal citations omitted).]
"Inherent in these decisions is the principle that the entire public is entitled to notice in full compliance with the governing statutory provisions, and that the public's entitlement to such notice may not be waived by those individual members of the public who actually attend the improperly noticed hearing." Croaff v. Evans, 130 Ariz. 353, 636 P.2d 131, 135 (Ct.App.1981); accord Kelly v. City of Philadelphia, 382 Pa. 459, 115 A.2d 238 (1955); Hurst v. City of Burlingame, 207 Cal. 134, 277 P. 308 (1929); Hopper v. Bd. of Cnty. Comm'rs, 84 N.M. 604, 506 P.2d 348, 351 (Ct.App.), cert. denied, 84 N.M. 592, 506 P.2d 336 (1973); Gendron v. Borough of Naugatuck, 21 Conn.Supp. 78, 144 A.2d 818, 824 (C.P.1958). We find this rationale compelling. On the issue of public notice of adopting or amending a zoning ordinance, a jurisdictional defect is not personal to a single objector but rather the right of the public, and therefore cannot be waived by one individual. Cf. Robert James Pacilli Homes, supra, 394 N.J.Super. at 331-32, 926 A.2d 412.
We need not further decide whether "strict" or "substantial" compliance with the statutory notice requirement is the governing standard for, by any measure, the notices provided by the City in this matter satisfy neither. On this score, defendants and intervenor argue that to require more than what was published by *1154 way of notice in this instance will inject an element of uncertainty and speculation into the publication process. We discern no such effect. In rejecting the City's vague, generalized notice and requiring instead compliance with the "brief summary" mandate of N.J.S.A. 40:49-2.1, we do not mean to suggest that the notice's content be exhaustive or detailed, but only reasonably inform of the substance of the proposed changes. A summary, after all, "is a statement that covers the main points concisely, but without detailed explanation, in a manner that serves to describe an object for the knowledge and understanding of others." Glazebrook v. Bd. of Supervisors, 266 Va. 550, 587 S.E.2d 589, 591-92 (2003). Therefore, municipalities need not guess as to what constitutes proper notice as an identification of the property and a brief description of the new zones and uses will suffice. Because the notices in this case fell far short of this measure and such defect is jurisdictional and non-waivable on behalf of the public at large, the ordinances are invalid.

II
Given this disposition, we need only briefly address, for future guidance, plaintiff's substantive challenge that Ordinance 52-71 is void because although attempting to create a "planned commercial development" (PCD) within the meaning of N.J.S.A. 40:55D-6, the ordinance fails to comply with the PCD requirements of the MLUL, N.J.S.A. 40:55D-45. We disagree. While admittedly the ordinance does not conform to the PCD requirements of the MLUL, it need not because the ordinance complies with the MLUL's conventional zoning, N.J.S.A. 40:55D-3, and is therefore valid in that respect.
First and foremost, a municipal ordinance enjoys a strong presumption of validity. Zilinsky v. Zoning Bd. of Adjustment, 105 N.J. 363, 368, 521 A.2d 841 (1987); Bow & Arrow Manor v. Town of West Orange, 63 N.J. 335, 343, 307 A.2d 563 (1973). Second, the fact that the zoning ordinance uses the term "planned commercial development" does not automatically trigger the requirements for such a development under the MLUL. Clearly, a municipality may define the same term differently than in the MLUL, so long as that definition is within the intendment of the MLUL. Rumson Estates, Inc. v. Mayor of Fair Haven, 177 N.J. 338, 354, 828 A.2d 317 (2003). In other words, the ordinance is valid if it otherwise conforms to the requirements of conventional zoning under the MLUL, N.J.S.A. 40:55D-3.
Plaintiff makes no credible claim that the ordinance does not comply with conventional zoning set forth in the MLUL. Nor does plaintiff cite to any element of Ordinance 52-71 that violates conventional zoning. Instead, plaintiff simply claims that certain features of Ordinance 52-71 are common to planned development, yet has failed to demonstrate they are exclusive to statutory PCD zoning, or conversely, are prohibited in conventional zoning. Indeed, we are aware of no authority that bars conventional zoning plans from adopting requirements like those found in the City's zoning ordinance for its PCD zone.
N.J.S.A. 40:55D-6 defines a PCD zone as one "to be developed according to a plan as a single entity . . . with [] common areas. . . ." Ordinance 52-71 does not require common areas. And although paragraph c(1) of the ordinance calls for development according to an overall master plan with uniform design standards, there is no further requirement that the property be developed as a single entity, by the same developer or at the same time. On the contrary, nothing in the ordinance prevents each lot from being developed separately by different owners at different times so long as development be undertaken *1155 according to overall design standards. The fact that Linden Development's draft plans detailed a unified planned development of mixed commercial and retail uses does not render it a statutory PCD in the absence of other features or elements of the definition in N.J.S.A. 40:55D-6. Indeed, the expert proof adduced at the hearing in this matter related that a statutory PCD is designed for large scale, long-term projects that involve (1) variation of intensity across the district to create clustering, common open space, common areas; and (2) general development plans for a single developer to build-out a project over many years while benefiting from the extended vesting that protects the developer's approvals over the long-term build-out.
We are satisfied that the preponderant credible expert proof objectively established that Ordinance 52-71 calls for conventional zoning and complies with the MLUL's requirements in that regard. It was therefore unnecessary for the judge to have remanded the matter to the Board to ascertain its members' subjective intent in passing on the ordinance. While admittedly such a procedure is unorthodox, in light of the objective evidence of conventional zoning, it does not require invalidation of Ordinance 52-71 on that ground alone.
Reversed.
NOTES
[1] Ordinance 53-10 made two changes to the zoning ordinance. It deleted the subsection for tract size in the area and bulk regulations for the PCD district and replaced it with a new subsection clarifying contiguity, and added another new subsection setting a height restriction for buildings in the PCD district not to exceed forty-five feet.
[2] Under N.J.S.A. 40:55D-62.1, mailed notices must state:

A notice pursuant to this section shall state the date, time and place of the hearing, the nature of the matter to be considered and an identification of the affected zoning districts and proposed boundary changes, if any, by street names, common names or other identifiable landmarks, and by reference to lot and block numbers. . . .
[(emphasis added).]
The requirement is identical to that in N.J.S.A. 40:55D-11, interpreted in Perlmart and Pond Run.