**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4171-15T3

CONCERNED CITIZENS OF LIVINGSTON,

    Plaintiff-Appellant,

v.

TOWNSHIP OF LIVINGSTON,
LIVINGSTON TOWNSHIP COUNCIL,
and PLANNING BOARD OF LIVINGSTON,

    Defendants-Respondents,

and

SUNRISE DEVELOPMENT, INC.,

    Defendant/Intervenor-
    Respondent.

_____

> Argued September 26, 2017 — Decided June 11, 2018
>
> Before Judges Carroll and Leone.
>
> On appeal from Superior Court of New Jersey,
> Law Division, Essex County, Docket No. L-2171-
> 16.
>
> Charles X. Gormally argued the cause for
> appellant (Brach Eichler, LLC, attorneys;
> Charles X. Gormally, of counsel and on the
> brief; Autumn M. McCourt, on the briefs).

James T. Bryce argued the cause for respondents (Murphy McKeon, PC, attorneys; James T. Bryce, on the brief).

Paul H. Schneider argued the cause for intervenor-respondent (Giordano, Halleran & Ciesla, PC, attorneys; Paul H. Schneider, of counsel and on the brief; Matthew N. Fiorovanti, on the brief).

PER CURIAM

Plaintiff Concerned Citizens of Livingston appeals from a May 10, 2016 order dismissing its complaint challenging the notice given concerning zoning ordinance 22-2015 (Ordinance) of defendant Township of Livingston (Township). The trial court dismissed the complaint as untimely under Rule 4:69-6(a). We agree with the court that notice was fatally deficient because the Ordinance changed the classification of the zone. We also agree that the complaint was filed beyond the rule's time period. However, we find the fatal notice deficiency justified an enlargement of time under Rule 4:69-6(c). Accordingly, we affirm in part, reverse in part, and remand.

## I.

Plaintiff filed a verified complaint, stating plaintiff is a representational plaintiff comprised of residents of Livingston living within 200 feet of a particular lot (Lot) as well as residents living beyond 200 feet who are impacted by the Ordinance. Plaintiff claimed that, prior to the adoption of the Ordinance,

2

the Township's zoning ordinances prohibited the development of an assisted living facility on the Lot. Plaintiff alleged the Ordinance was passed to enable intervenor Sunrise Development, Inc. (Sunrise) to build an assisted living facility on the Lot.

At its September 24, 2015 meeting, defendant Planning Board of the Township of Livingston (Board) recommended the proposed Ordinance to defendant Livingston Township Council (Council), the Township's governing body. The Council gave published notice of its October 26, 2015 meeting by faxing the agenda to the West Essex Tribune and the Star-Ledger. The agenda stated there was a proposed Ordinance about "Assisted Living - Conditional Use," and added: "Purpose: Amends Township Code to allow Assisted Living Facilities as a conditional use when certain criteria are met." No other notice was given to members of the public.

On October 26, the Council introduced the proposed Ordinance for first reading. The Council referred the proposed Ordinance to the Board to determine if the Ordinance was consistent with Livingston's master plan. As discussed below, the Council on October 29, 2015, gave notice only by publication that the Ordinance would be considered for final passage on November 9, 2015. The Council did not provide written notice to property owners within 200 feet of the affected zones.

At its November 3, 2015 meeting, the Board considered the Ordinance. Notice of the meeting was published in the West Essex Tribune and posted on a bulletin board. The Board's agenda simply stated that it was reviewing the Ordinance about "Assisted Living - Conditional Use." No members of the public appeared in connection with the Board's review of the Ordinance. The Board determined the Ordinance about "Assisted Living - Conditional Use" was consistent with the master plan.

On November 9, twelve days after the Ordinance's introduction in the Council, the Council adopted the Ordinance by title only, without reading it publicly. No members of the public appeared or spoke at the Council meeting regarding the Ordinance. On November 12, 2015, the Township clerk published in the West Essex Tribune a notice simply stating that the Ordinance had been passed on November 9.

On February 2, 2016, the Board held a hearing on Sunrise's application to build an assisted living facility on the Lot. Sunrise concedes its proposal was designed to be consistent with the Ordinance.

On March 31, 2016, plaintiff filed an action against the Township, the Council, and the Board (defendants). The complaint contained three counts, alleging violation of: (1) the notice requirements of N.J.S.A. 40:55D-62.1; (2) the prohibition on spot

zoning; and (3) the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-2. The trial court granted plaintiff's request to temporarily restrain the Board from considering Sunrise's application.

The Township filed an answer, and a motion to dismiss count three for failure to state a claim upon which relief can be granted under Rule 4:6-2(e). On April 22, 2016, the trial court issued an order granting Sunrise's motion to intervene.

On May 10, 2016, the trial court sua sponte dismissed the entire complaint because it was not filed within forty-five days of the publication of the enacted Ordinance. The court denied plaintiff's oral motion for a stay. We denied plaintiff's emergent motion seeking a stay pending appeal.

II.

Whether the complaint challenging the Ordinance should have been dismissed as untimely depends in part on whether notice concerning the Ordinance was deficient. Thus, we begin by reviewing the trial court's decision that the notice was fatally deficient.

The notice generally required is set forth in N.J.S.A. 40:49-2(a), which provides that, after the first reading, a proposed ordinance

> shall be published in its entirety or by title
> or by title and summary at least once in a
> newspaper published and circulated in the

> municipality, if there be one, and if not in a newspaper printed in the county and circulating in the municipality, together with a notice of the introduction thereof, the time and place when and where it will be further considered for final passage, a clear and concise statement prepared by the clerk of the governing body setting forth the purpose of the ordinance, and the time and place when and where a copy of the ordinance can be obtained without cost by any member of the general public who wants a copy of the ordinance.

After the first reading of the Ordinance, the Council issued a public notice dated October 29, 2015, published in the West Essex Tribune, which stated the Ordinance had been "introduced and passed on first reading" on October 26, and would be considered for final passage on November 9, 2015, at 8:00 p.m. at the M&PB. The published notice printed the entire Ordinance, whose preamble stated its purpose, and also advised that copies were available at the clerk's office. This complied with N.J.S.A. 40:49-2(a).

However, the trial court found that under Robert James Pacilli Homes, LLC v. Twp. of Woolwich [Pacilli], 394 N.J. Super. 319 (App. Div. 2007), "the notice provisions of N.J.S.A. 40:55D-62.1 [we]re triggered, requiring certified mail notices to property owners within the affected zones as well as property owners within 200 feet of the affected zones." We agree.

The Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, imposes additional notice requirements for certain ordinances.

N.J.S.A. 40:55D-62.1 "directs that all property owners within a zoning district shall receive personal notice if the municipal body seeks to change the classification or boundaries of a zoning district." Pacilli, 394 N.J. Super. at 329; see Grabowsky v. Twp. of Montclair, 221 N.J. 536, 558-59 (2015). The statute provides:

> Notice of a hearing on an amendment to the zoning ordinance proposing a change to the classification or boundaries of a zoning district . . . shall be given at least 10 days prior to the hearing by the municipal clerk to the owners of all real property as shown on the current tax duplicates, located, in the case of a classification change, within the district and within the State within 200 feet in all directions of the boundaries of the district, and located, in the case of a boundary change, in the State within 200 feet in all directions of the proposed new boundaries of the district which is the subject of the hearing.
>
> . . . .
>
> Notice shall be given to a property owner by: (1) serving a copy thereof on the property owner as shown on the said current tax duplicate, or his agent in charge of the property, or (2) mailing a copy thereof by certified mail and regular mail to the property owner at his address as shown on the said current tax duplicate.
>
> [N.J.S.A. 40:55D-62.1 (emphasis added).]

It is undisputed the Council did not serve or mail a copy of the Ordinance to all property owners within the district and within 200 feet of the district. Thus, whether notice was adequate

7

depends on whether the Ordinance "propos[ed] a change to the classification . . . of a zoning district." Ibid.

"We examined what the MLUL intended by a 'classification' change in [Pacilli], recognizing that '[u]nlike many terms found in the MLUL, "classification" is not defined.'" Mahwah Realty Assocs., Inc. v. Twp. of Mahwah, 430 N.J. Super. 247, 253 (App. Div. 2013) (quoting Pacilli, 394 N.J. Super. at 329). "Until the Legislature adopts some different meaning, we will continue to apply, as we apply here, Pacilli's general understanding of the term[.]" Id. at 254 (footnote omitted).

In Pacilli, we ruled that "in its most general sense, classification refers to the use permitted in a zoning district, such as residential, commercial or industrial, as well as sub-categories within the broader uses, such as single-family residential and high-density residential, highway commercial and neighborhood commercial, and highway retail and neighborhood retail." 394 N.J. Super. at 330-31. Classification also refers to "uses that may be permitted under certain conditions within a generally designated category. A change in any of these broad categories and sub-categories has the capacity to fundamentally alter the character of a zoning district." Id. at 331.

We also ruled in Pacilli that "classification" also "include[s] changes to the density, bulk and height standards and

conditions applicable to designated uses," because "changes in bulk and density requirements within a zone can effect a substantive change in future development within a zone without any alteration to the label applied to the zone." Id. at 331-32. Thus, determining "the type of notice to be provided on the occasion of a proposed amendment to a zoning ordinance should focus on the substantive effect of the amendment rather than the appellation given to the zone." Id. at 332.

In Pacilli, we held an amendment which made "sweeping" changes to the bulk and density requirements in two residential zoning districts "dramatically altered the intensity of the residential use within each zone and promised to affect the character of the future development in both zones." Id. at 332. We observed "the scope of the changes . . . is illustrated simply by focusing on the maximum gross density per acre," which changed from one unit per two acres under the existing zoning laws and the ordinance's "Option 1" to one unit per ten acres under the ordinance's "Option 2." Ibid. We ruled that change itself "effects a fundamental alteration of the character of this zoning district." Id. at 332. Therefore, "the Township Committee was required to follow the notice requirements of N.J.S.A. 40:55D-62.1," and as it did not, the ordinance was "invalid." Id. at 333.

9

As the trial court found, the Ordinance made similarly "sweeping changes" to the bulk and density requirements for assisted living facilities. Before its passage, section 170-88.1 of the existing Township Code provided that an assisted living facility was a permissible conditional use in any zone, with specified exceptions. Such a facility had to have: road frontage and direct access to one of seven roads, including South Orange Avenue or Passaic Avenue; a minimum lot size of six acres; minimum frontage width of 100 feet; minimum setbacks of 100 feet from residential property lines and seventy-five feet from non-residential property lines; maximum impervious coverage of 50%; a maximum building height of thirty-five feet; a maximum of twenty units per acre; and a maximum total number of units of 5% of the number of single-family detached dwelling units in the Township.

The Ordinance added a new subsection to section 170-88.1 that provided that an assisted living facility could be permitted as a conditional use in any zone, with an increased number of exceptions, if it had: road frontage and direct access to South Orange Avenue or Passaic Avenue; a minimum lot size of three acres; a minimum frontage width of 200 feet; minimum setbacks of twenty-five feet from both residential and non-residential property lines with 150 feet from any dwelling; a maximum impervious coverage of 60%; and a maximum building height of thirty-five feet or three

stories, or forty-seven feet or four stories plus a six-foot mansard if set back 100 feet; a maximum of 32.31 units per acre.

The Ordinance also exempted affordable housing units from the maximum total number of assisted living units which were limited to 5% of the number of single-family detached dwelling units in the Township. The Ordinance also required: a minimum of 102 units with thirteen affordable housing units and a maximum of 105 units with fourteen affordable housing units; specific setbacks for the principal building and gazebo; and specific requirements for parking and landscape buffers.

We agree with the trial court's findings that the Ordinance's

> changes are sweeping in that they allow for 32.21 units per acre on 3 acre lots, rather than the 20 units per acre on 6 acre lots in the pre-existing ordinance. The Ordinance removes most of the protections in place that buffered surrounding neighbors, and increases the allowable building height from 35 feet to 47 feet, all while placing the buildings in closer proximity to roads and adjoining properties.

The trial court explained that under the Ordinance, "[t]he required front yard setback changed from 100 feet to 75 feet," and "[r]equired rear and side setbacks" changed from "100 feet from residential property lines" "to only 25 feet." The court found the Ordinance "decreases the lot size and increases the density, increases the building height and decreases nearly every setback

requirement." The court concluded the Ordinance made "significant changes that adversely affect the single family residential nature of the R-1 zone, and thereby fundamentally alter the character of the zoning district." We agree.

Sunrise argues the Ordinance's changes are less sweeping than those in Pacilli. However, like the ordinance in Pacilli, the Ordinance changed minimum lot width; minimum front, side, and rear setbacks; maximum impervious coverage; minimum lot size; and maximum unit density per acre. The Ordinance also changed the maximum building height, and made other changes.

Sunrise notes "the test is not the number of changes but the substance of the changes." Pacilli, 394 N.J. at 333. However, the Ordinance's changes are comparable in substance to those in Pacilli. For example, the Ordinance decreased the minimum acreage by 50%, decreased the side and rear setbacks by 66.6%, and increased the maximum number of units per acre by over 61%. The Ordinance changed by three acres the minimum lot size, as did the ordinance's Option 2 in Pacilli for each half unit.

Because the zoning code already conditionally permitted assisted living facilities in the R-1 zone, Sunrise argues the Ordinance did not change the uses or sub-categories of uses. The same was true in Pacilli - the residential zones already permitted homes — but the ordinance changed "the intensity of the permitted

use." Id. at 330. The Ordinance did the same. The total effect of the Ordinance's changes allowed an assisted living facility with 105 units on the Lot, which was half the size of the lot required for any assisted living facility or units under the existing zoning code.

The trial court found the Ordinance "allow[ed] for the construction of an assisted living facility on a lot where it could not have previously been constructed." The court noted the R-1 zone was "designed for single-family homes on lots not smaller than 35,520 square feet," that is, one house per lot of at least 7.28 acres. Allowing the densely-populated assisted living facility in the R-1 zone of seven-acre housing lots was a substantial change comparable to that made by Option 2 in the ordinance in Pacilli, which "transform[ed] a zoning district of generous lots to one of manorial proportions." Id. at 332.

We recognize the change in Pacilli affected the housing lots in the residential zones, while the change here affected a conditional use in the R-1 residential zone.[1] However, we have already found that a change in one of many uses may constitute a significant enough change under Pacilli. In Mahwah, we held "an

---

[1] The Ordinance also changed the uses in other zones, including by providing that "[a]n assisted living facility, congregate senior living facility or nursing home" were no longer permitted in zones R-5F, R-5G, R-5H, and R-5I.

ordinance that authorizes 'health and wellness centers' and 'fitness and health clubs' in two industrial zones changes the 'classification' of those zones." 430 N.J. Super. at 250. We ruled "[t]he additional uses in question fundamentally alter the industrial zoning districts" because the "proposed uses are clearly discordant from the uses permitted in the affected industrial zoning districts[,]" which included "public parks, playgrounds or athletic fields." Id. at 254-55. The Ordinance allowed a densely-populated assisted living facility that was comparably "dissimilar" to and "discordant" from the seven-acre per unit residential lots in the R-1 zone. Ibid.

Because the Ordinance worked a classification change, N.J.S.A. 40:55D-62.1 required certified mail notices to property owners within the affected zones concerning the proposed Ordinance. As the trial court found: "This was not done by Livingston, and the failure to do so would invalidate the Ordinance."[2]

---

[2] Plaintiff contends that the personal notice here should have included "an identification of the affected zoning districts and proposed boundary changes, if any, by street names, common names or other identifiable landmarks, and by reference to lot and block numbers." N.J.S.A. 40:55D-62.1. In Mahwah, however, we held "N.J.S.A. 40:55D-62.1 requires only identification of the zoning districts affected by the classification change. The additional requirement for identification of the specific impacted properties only applies when a change in boundaries is proposed." 430 N.J. Super. at 250, 255-60.

A-4171-15T3

Despite finding that required personal notice of the Ordinance was not given to plaintiff's members, the trial court sua sponte dismissed plaintiff's complaint because it was untimely. The court found the complaint was not filed within the period set in Rule 4:69-6(a), and there was no reason to enlarge that period under Rule 4:69-6(c). We address each in turn.

A.

Plaintiff does not contest that its action is governed by Rule 4:69-6(a). "No action in lieu of prerogative writs shall be commenced later than 45 days after the accrual of the right to the review, hearing or relief claimed, except as provided by paragraph (b) of this rule." Ibid. Here, the Ordinance was adopted on November 9, 2015, and notice of its adoption was given by a publication on November 12, 2015.

Defendants argue that the right to review accrued on the date of the notice. N.J.S.A. 40:49-2(d) provides:

> Upon passage, every ordinance, or the title, or the title and a summary, together with a notice of the date of passage or approval, or both, shall be published at least once in a newspaper circulating in the municipality, if there be one, and if not, in a newspaper printed in the county and circulating in the municipality. No other notice or procedure with respect to the introduction or passage of any ordinance shall be required.

Plaintiff argues the lack of personal notice meant that its cause of action did not accrue upon publication and that the forty-five days never began to run. Plaintiff cites <u>Harrison Redevelopment Agency v. DeRose</u>, 398 N.J. Super. 361, 401 (App. Div. 2008). However, <u>DeRose</u> concerned the question

> whether a property owner who fails to challenge a redevelopment designation containing his or her property within forty-five days of its adoption by a municipal governing body, pursuant to the Local Redevelopment and Housing Law ("LRHL"), N.J.S.A. 40A:12A-1 to -49, may still challenge, in full or in part, the public purpose of the taking of his or her property, by way of a defense in an ensuing condemnation action.
>
> [<u>Id.</u> at 367.]

In <u>DeRose</u>, we held an owner could raise such a challenge "unless a municipality provides the property owner with contemporaneous written notice that" the owner's property has been designated for redevelopment and could be acquired against the owner's will unless he challenged that designation with a specified period. <u>Id.</u> at 367-68. "Conversely, we also h[e]ld that if the municipality's notice does contain these constitutionally-essential components, an owner who wishes to challenge the designation presumptively must bring an action, in lieu of prerogative writs, within forty-five days of the municipality's adoption of the designation." <u>Id.</u> at 368.

16

The question we faced in <u>DeRose</u> is not posed here.  This case does not concern redevelopment or condemnation, let alone the defenses available in condemnation.  See <u>Milford Mill 128, LLC v. Borough of Milford</u>, 400 N.J. Super. 96, 115 n.10 (App. Div. 2008) (distinguishing <u>DeRose</u>).  The Ordinance did not threaten to take the properties of plaintiff's members against their will.  See <u>Town of Kearny v. Disc. City of Old Bridge, Inc.</u>, 205 N.J. 386, 404-05 (2011) (distinguishing <u>DeRose</u> where the plaintiff was a tenant and not the owner of the property targeted for redevelopment).  No constitutional challenge has been raised here. See <u>Iron Mountain Info. Mgmt., Inc. v. City of Newark</u>, 202 N.J. 74, 78 (2010) (same).  Because <u>DeRose</u> "addressed an entirely different question," the trial court properly did not find <u>DeRose</u> controlling.  See <u>ibid.</u>

Thus, the right of review accrued on November 12, 2015, when notice of the Ordinance's passage was published.[3]  Plaintiff's complaint was not filed until March 31, 2016.  Thus, plaintiff's action was not filed within the forty-five day period in <u>Rule</u> 4:69-6(a).

---

[3] Thus, this case does not resemble <u>Trenkamp v. Burlington</u>, 170 N.J. Super. 251 (Law Div. 1979), where the court found accrual was delayed because there was "no statute requiring a public announcement in connection with applications for or issuance of building permits."  <u>Id.</u> at 259.

Rule 4:69-6(c) provides that "[t]he court may enlarge the period of time provided in paragraph (a) or (b) of this rule where it is manifest that the interest of justice so requires." The trial court found it was not in the interests of justice to relax the time limit. The court reasoned: "Despite the fact that mailed written notice was not provided to individual landowners, notice was provided by publication, in the same manner that all other ordinance change notices are provided." The court found that "was sufficient notice to the residents of Livingston that the Ordinance change was to take effect."

However, the notice provided after the Ordinance's passage bore no resemblance to the notice that plaintiff's members were entitled to receive. As discussed above, N.J.S.A. 40:55D-62.1 required defendants to give plaintiff's members personal notice by hand-service or by both certified and regular mail that the Ordinance was being considered for final passage. That notice was required to state "the nature of the matter to be considered and an identification of the affected zoning districts." Ibid. Had defendants sent plaintiff's members the October 29 notice, they would have received the full text of the Ordinance, which would have alerted them not only to the zoning districts affected, but also the Ordinance's rationale that assisted living facilities

should "be encouraged at appropriate locations by reductions in minimum lot size requirements, limited increases in permitted density and building height and other bulk changes," and to the details of the lot size, density, height, setback, and other changes.

By contrast, the only notice that the Ordinance had been passed was a tiny item published on November 12, 2015, in the West Essex Tribune stating that the "TOWNSHIP OF LIVINGSTON PASSED [AN] ORDINANCE" on November 9, 2015, and describing only as "ORDINANCE NO. 22-2015[:] ORDINANCE OF THE TOWNSHIP OF LIVINGSTON AMENDING CHAPTER 170 OF THE CODE OF THE TOWNSHIP OF LIVINGSTON." That notice gave no clue about the subject or content of the Ordinance unless the reader knew Chapter 170 was the "Land Use" chapter of the Code, and even then the notice did not specify the section or subsection amended. That notice published in the West Essex Tribune provided none of the information which plaintiff's members would have received through personal service of the October 29 notice under N.J.S.A. 40:55D-62.1.

These circumstances "satisfy the standards in Rule 4:69-6(c) and warrant enlargement of the forty-five-day period because 'it is manifest that the interest of justice so requires.'" See Hopewell Valley Citizens' Grp. v. Berwind Prop. Grp. Dev. Co., 204 N.J. 569, 571 (2011). "[T]he plain language of paragraph (c)

19

suggests that a court has discretion to enlarge a Rule 4:69-6(a) or (b) timeframe when it perceives a clear potential for injustice." Id. at 578.

"Our Supreme Court has recognized that cases 'involving: (1) important and novel constitutional questions; (2) informal or ex parte determinations of legal questions by administrative officials; and (3) important public rather than private interests which require adjudication or clarification' have satisfied the 'interest of justice' standard in Rule 4:69-6(c)." Mullen v. Ippolito Corp., 428 N.J. Super. 85, 106 (App. Div. 2012) (citation omitted); see In re Ordinance 2354-12 of W. Orange, 223 N.J. 589, 601 (2015). However, that "list of exceptions was not intended to be exhaustive." Hopewell Valley, 204 N.J. at 584.

Courts have also "recognized municipal negligence as a basis for invoking Rule 4:69." Ibid. (citing Reilly v. Brice, 109 N.J. 555, 557 (1988)). In Reilly, "the challenge to the council's ratification of a four-year $20,000 municipal consulting contract was not brought until five months after it occurred." Id. at 580 (citing Reilly, 109 N.J. at 557). The published agenda for the meeting did not list the contract as an agenda item, and the minutes of the meeting "failed to state any of the specifics of the contract." Reilly, 109 N.J. at 559-60.

20

Our Supreme Court in Reilly "attributed the blame for the lateness of that proceeding to the negligence of the municipality" because "'the descriptions of the proposed public action [could have] been more specific' on the agenda of the meeting that was published." Hopewell Valley, 204 N.J. at 580-81 (quoting Reilly, 109 N.J. at 559-60). The Court "h[e]ld that in the circumstances of this case the proper exercise of discretion is to enlarge the forty-five day limitation to allow review of the challenged municipal action." Reilly, 109 N.J. at 557. The Court reversed the trial court's denial of an extension, and itself enlarged the time. Id. at 560-61.

In Reilly, the Court noted "[p]laintiffs assert no private interest in challenging this contract, but rather seek vindication of the public interest." Id. at 558. The Court acknowledged that "[b]alanced against these public interests, however, is the important policy of repose expressed in the forty-five day rule." Id. at 559. The rule "is designed to encourage parties not to rest on their rights. In general, ignorance of the existence of a cause of action will not prevent the running of a period of limitations except when there has been concealment." Id. at 559. However, "[i]mportantly, the concealment need not be intentional or malicious, as evidenced by the fact[s] . . . in Reilly[.]" Hopewell Valley, 204 N.J. at 580.

Here, even if unintentional and non-malicious, the concealment of the nature of the Ordinance was at least as significant as the concealment in Reilly. As in Reilly, the concealment primarily occurred in the notice preceding the meeting in which the challenged municipal action was taken, and was compounded by the lack of detail in the subsequent statement of what action had been taken. As set forth above, defendants' failure to mail personal notice to plaintiff's members deprived them of the individual service of information required by N.J.S.A. 40:55D-69.1, and the notice after the Ordinance's passage gave them little if any information. The delay in filing the complaint here was shorter than the five-month delay in Reilly.

In addition to the private interests of plaintiff's members, there are public interests at stake here. "Our courts have found a sufficient public interest to justify an extension of time for filing a prerogative writ action in a variety of circumstances, including challenges to the validity of ordinances on the ground that they were not adopted in conformity with the applicable statutory requirements." Willoughby v. Planning Bd. of Deptford, 306 N.J. Super. 266, 277 (App. Div. 1997) (citing Reilly, 109 N.J. at 560-61). The failure to provide personal notice as required by N.J.S.A. 40:55D-62.1 contravenes the public interest in ensuring residents in a district know of their opportunity to

22

oppose a change in its classification.  See Pacilli, 394 N.J. Super. at 333.  There is also a public interest in opposing spot zoning, which is "'the use of the zoning power to benefit particular private interests rather than the collective interests of the community.'"  Riya Finnegan Ltd. Liab. Co. v. Twp. Council of S. Brunswick, 197 N.J. 184, 195 (2008) (citation omitted). Considered together, there was "sufficient public interest to warrant relaxation of the forty-five-day filing limitation through application of Rule 4:69-6(c)."  Concerned Citizens of Princeton, Inc. v. Mayor & Council of Princeton, 370 N.J. Super. 429, 447 (App. Div. 2004); see DeRose, 398 N.J. Super. 361, 418 (App. Div. 2008) (ruling an enlargement under Rule 4:69-6(c) was justified by the public interest and "[t]he multiple defects of notice"); Wolf v. Shrewsbury, 182 N.J. Super. 289, 296 (App. Div. 1981) (reversing the denial of an enlargement where notice was inadequate).

Sunrise cites Rocky Hill Citizens for Responsible Growth v. Planning Bd. of Rocky Hill, 406 N.J. Super. 384 (App. Div. 2009). In Rocky Hill, we upheld denial of an enlargement largely because "the ordinance was the subject of intense debate at all times. Public consideration of this ordinance was extensive," and "participation was substantial" at the public hearings, which one of the plaintiffs attended, yet plaintiffs adopted "a 'wait and

23

see' strategy" and failed to file a complaint for nearly two years. Id. at 402-03.[4]

Here, by contrast, the notice for the hearing on the Ordinance was fatally deficient, no member of the public appeared in connection with the Council's review of the Ordinance, there is no claim any member of plaintiff was aware of the Ordinance at or near its November 2015 passage, and plaintiff filed its complaint within five months. Those circumstances were sufficient to justify an enlargement under Reilly.

Sunrise claims plaintiff had actual knowledge of the adoption of the Ordinance in early January 2016. Sunrise cites the verified complaint and certification signed by Lidia Dumytsch. She identified herself as "an owner of property within 200 feet of the [Lot]," "a member of" plaintiff, plaintiff's volunteer "Secretary/Treasurer," and the "Tax Assessor for the Township of Livingston." In the complaint and her certification, she attested she was unaware of the Ordinance until after she received a request as the Tax Assessor to prepare a list of property owners who lived within 200 feet of the Lot for Sunrise's application to the Board

---

[4] In Rocky Hill, we also noted other aspects of cases granting enlargement were not present, such as issues of "the constitutional adequacy of the notice to property owners" present in DeRose, and "significant impact on density" as in Willoughby. 406 N.J. Super. at 400-01. Here, we have statutorily-inadequate notice to property owners and a significant impact on density.

for approval of its site plan, when she investigated and discovered the Council had passed the Ordinance in November 2015.

However, Dumytsch did not state when she received the request for the list or when her investigation discovered the Ordinance. Sunrise claims that occurred in early January, and cites its site plan application. However, the application appears to have been signed January 26, 2016. Notice of Sunrise's application to all property owners "within 200 feet in all directions of the" Lot was not required until "at least 10 days prior to the date of the hearing" on the site application, which was held on February 2. N.J.S.A. 40:55D-12, -12(b). Even assuming Dumytsch's discovery of the Ordinance occurred in early rather than late January, it would not necessarily bar an enlargement for plaintiff or its other members.

In <u>Rockaway Shoprite Assocs., Inc. v. City of Linden</u>, 424 N.J. Super. 337 (App. Div. 2011), the city sent notice of proposed ordinances that was fatally defective. <u>Id.</u> at 344. The "[d]efendants and intervenor nevertheless contend[ed] that because plaintiff's representative attended the public hearing . . . and did not object to the lack of proper notice, plaintiff 'waived' its right to challenge the ordinances on that basis." <u>Id.</u> at 351. In rejecting that argument, we cited "[t]he general rule . . . that strict compliance with statutory notice requirements is

mandatory and jurisdictional, and non-conformity renders the governing body's resultant action a nullity." Id. at 352. We also found "compelling" "'the principle that the entire public is entitled to notice in full compliance with the governing statutory provisions, and that the public's entitlement to such notice may not be waived by those individual members of the public who actually attend the improperly noticed hearing.'" Id. at 354 (citation omitted). "On the issue of public notice of adopting or amending a zoning ordinance, a jurisdictional defect is not personal to a single objector but rather the right of the public, and therefore cannot be waived by one individual." Ibid.

If in Rockaway Shoprite the appearance at the hearing of Shoprite's attorney and professional planner "who voiced no objection to the ordinance" did not waive Shoprite's right to claim lack of notice, id. at 342, 355, then Dumytsch's post-hearing discovery of the fatal lack of notice here did not waive the right of any other member of the public to seek an enlargement to claim lack of notice, including the persons represented by plaintiff. Although Sunrise notes Dumytsch is plaintiff's only identified member, Dumytsch certified that "the number of members of [plaintiff] is currently in excess of 75 residents, [and] as each day goes by I am being contacted by others who are learning of the

amended zoning at issue in this lawsuit and who express an interest in joining [plaintiff]'s efforts."

Sunrise cites "the imputation doctrine" that "a principal is deemed to know facts that are known to its agent." NCP Litig. Tr. v. KPMG LLP, 187 N.J. 353, 366 (2006). However, in Rockaway Shoprite, despite the knowledge of Shoprite's attorney and planner, we held Shoprite could challenge the fatally-defective notice to vindicate the public's "jurisdictional and non-waivable" right to notice of zoning amendments. 424 N.J. Super. at 355. We are even more reluctant to wield the doctrine to prevent plaintiff from challenging the fatally-defective notice here, because it is a representational plaintiff which apparently was not in existence when Dumytsch discovered the Ordinance, and whose other members learned of the Ordinance after Dumytsch did.

Rule 4:69-6 is "aimed at those who slumber on their rights." Hopewell Valley, 204 N.J. at 579 (quoting Schack v. Trimble, 28 N.J. 40, 49 (1958)). We cannot say all of plaintiff's members slumbered on their rights as the record contains no information when each member, deprived of the notice required by N.J.S.A. 40:55D-62.1, first learned of the Ordinance. See id. at 585 (finding a plaintiff did not "slumber on its rights" when it received incorrect information from a Board employee).

In Reilly, our Supreme Court ruled: "Without delving into the question of when plaintiffs' right to challenge the Council's action arose (plaintiffs claim not to have learned of the matter until early April), we are satisfied that this factual setting properly calls for an exercise of judicial discretion to enlarge the time to review the action." 109 N.J. at 560. We similarly do not believe we must remand to delve into when each of plaintiff's members learned of the Ordinance, particularly as Dumytsch certified new members had only recently joined plaintiff's efforts, and any timely member may be sufficient to allow the suit to proceed. See id. at 560-61 ("rather than remand this matter for further exercise of discretion by [the trial] court, we believe that in the interest of expedient disposition of this matter, time should be enlarged").

Moreover, the delay here from the November 12 notice, or Dumytsch's discovery of the Ordinance sometime in January, to the March 31 filing of plaintiff's complaint was less than the five-month delay in Reilly. Id. at 557, 561. The trial court cited the Law Division's statement in Trenkamp that courts should "in no circumstance enlarge the time period on this ground beyond 45 days from the time at which plaintiff knew or should have known of the cause of action." 170 N.J. Super. at 265. However, we have since held that where the public interest is involved, "the

28

court may grant even a very substantial enlargement of the time in order to afford affected parties an opportunity to challenge the alleged unlawful governmental action." Willoughby, 306 N.J. Super. at 276-77 (citing enlargements of several years). In any event, Dumytsch's certification and the lack of the required personal notice indicates some of plaintiff's members neither knew nor should have known of the Ordinance until within forty-five days of the filing of the complaint.

"[T]he determination to enlarge a timeframe under [Rule 4:69-6](c) [i]s an 'exercise of judicial discretion.'" Hopewell Valley, 204 N.J. at 578 (reversing the denial of an enlargement) (quoting Reilly, 109 N.J. at 560 (same)). We review the trial court's decision for abuse of discretion. Willoughby, 306 N.J. Super. at 273 (reversing the denial of an enlargement). We must hew to that standard of review.

Applying that standard, as our Supreme Court did in Reilly, we reverse the dismissal of plaintiff's complaint as untimely because we are convinced "that this factual setting properly calls for an exercise of judicial discretion to enlarge the time to review the action." 109 N.J. at 559-60. "The MLUL ensures that the public has a chance to be heard . . . by imposing notice requirements." Twp. of Stafford v. Stafford Twp. Zoning Bd. of Adjustment, 154 N.J. 62, 70 (1998). "The Legislature's choice to

compel notice to property owners within a 200-foot radius provides an objective measure of a neighboring property owner's interest in a zoning dispute." Grabowsky, 221 N.J. at 559. Given the denial to plaintiff's members of the personal notice of the Ordinance required by N.J.S.A. 40:55D-69.1, "the interest of justice" requires they have an opportunity to challenge the Ordinance. R. 4:69-6(c). Accordingly, we reverse the dismissal of plaintiff's complaint as untimely.

IV.

The zoning power "must be exercised in strict conformity with the delegating enactment — the MLUL." Nuckel v. Borough of Little Ferry Planning Bd., 208 N.J. 95, 101 (2011). Our Supreme Court has ruled "'[t]he giving of statutory notice of hearing is a jurisdictional requirement, and unless notice is given as required by statute the board lacks power to hear or consider an application.'" Twp. of Stafford, 154 N.J. at 79 (citation omitted). "Non-compliance with the personal notice requirements of N.J.S. 40:55D-62.1 renders an amendment invalid." Cox & Koenig, New Jersey Zoning & Land Use Administration, § 10-2.3 at 159 (2018) (citing Pacilli, 394 N.J. Super. at 333). Thus, we declare the Ordinance is invalid.

Plaintiff also appeals the trial court's dismissal of its count alleging a violation of the CRA. Although the invalidation

of the Ordinance may remove the need to further litigate that claim, plaintiff's CRA count also seeks attorney's fees and costs under N.J.S.A. 10:6-2(f). Out of an abundance of caution, we review the dismissal of the CRA count.

The trial court dismissed the CRA count for failure to state a claim. "[W]e apply a plenary standard of review from a trial court's decision to grant a motion to dismiss pursuant to Rule 4:6-2(e)." Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011). We affirm the dismissal of the CRA count substantially for the reasons set forth in the court's May 10, 2016 statement of reasons. See id. at 113-15; see also Nostrame v. Santiago, 213 N.J. 109, 128 (2013).

Much time has passed since enactment of the Ordinance in November 2015. We have almost no information on subsequent developments. We remand to the trial court to determine what further proceedings and relief are needed under plaintiff's complaint.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION