IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

JUNE TERM, 1900.

FRANK E. DE LONG ET AL. v. THE SPRING LAKE
AND SEA GIRT COMPANY.

Submitted December 9, 1899—Decided June 11, 1900.

1. The Spring Lake Beach Improvement Company was incorporated in 1875, and became the owner of a tract of about four hundred acres, within the borders of which was a body of water known as Spring lake that gave special value to the entire tract. A plan of lots was adopted in 1876, and the map filed in the county clerk's office in 1878, upon which were laid out lots, streets and avenues. Passaic avenue was on the northerly side of the lake, skirting it, and a short distance from the lake. Lot No. 41 borders on the lake, and lies between it and Passaic avenue. This lot the defendant company (which succeeded the Spring Lake Beach Improvement Company) conveyed to the plaintiffs for the consideration of $12,000, $4,000 of which was paid in money and the residue by certificates or due-bills. The deed contained, first, a covenant of seizin in fee; second, a covenant for good rights, full power and sufficient authority in law to sell and convey; third, a covenant for peaceable possession; fourth, that the premises were free from all former mortgages, judgments and executions, and of and from all other encumbrances whatever, and fifth, a covenant of warranty. The plaintiffs declared on the covenant against encumbrances, and the breach assigned is that the lot con-

VOL. XXXVI.           1

veyed had been dedicated to public use, with the land around the lake. By the original map of 1876, which was filed in the county clerk's office in 1878, there is no indication on the face of the map that this lot was dedicated for a public use, except that it was covered with trees. The proof is that it was unenclosed, that there were seats on it, and that it was used by children as a pleasure-ground. But that evidence was not sufficient of itself to show a dedication arising from user. There was also proof that the lake itself was free to the public at all times for boating, sailing and fishing, and that from the time the Spring Lake Beach Improvement Company acquired title down to the time the conveyance was made to the Spring Lake and Sea Girt Company, a period of sixteen years, the officers and agents of the first-named company represented to all who intended to become purchasers that the land along the lake was to be kept open for the use of the public and the landowners, and that such representations were made by the officers and directors of the company, and that the agents were authorized by them to inform the public that the lake was free to the public at all times and that the margin of land around the lake was for park purposes. *Held*, that the evidence was sufficient to justify the finding of the jury that this plot of ground was dedicated to public use, and that such dedication was irrevocable.

2. The general doctrine of the law is that an easement on the premises conveyed is a breach of the covenant against encumbrances, but lands dedicated to the public use cannot strictly be regarded as an easement. Under the evidence in this case, the land company did not have title and had no right to convey. Strictly speaking, the plaintiffs should have counted upon the covenant of seizin and for power and authority to make sale. But the measure of damages for the breach of a covenant against encumbrances, where it is of such a character as to amount to a failure of title, is the same as the measure of damages for the breach of a covenant of seizin, namely, the consideration money and interest.

3. With respect to the period of time for which interest shall be allowed the decisions of the courts of our sister states are not harmonious. At an early period in New York the rule of allowing interest only for six years was adopted.

4. This court, as far back as 1839, adopted as a rule in an action for the breach of a covenant of warranty of title on eviction, to allow for damages the amount of the consideration money, with interest thereon, not exceeding six years antecedent to the eviction, together with costs, and no more. This rule for admeasuring damages is of so long standing in this state that it ought not to be disturbed at this time. We think it is applicable to this case. The trial court allowed interest from the date of the conveyance. A new trial will be allowed unless the plaintiffs will remit from the amount of their verdict the interest beyond six years.

On rule to show cause.

Before DEPUE, CHIEF JUSTICE, and Justices VAN SYCKEL and LIPPINCOTT.

For the rule, *James Buchanan.*

*Contra, Benjamin F. H. Shreve* and *Mark R. Sooy.*

The opinion of the court was delivered by

DEPUE, CHIEF JUSTICE.    This was an action of covenant. The Spring Lake and Sea Girt Company, on the 23d of August, 1892, by an indenture under seal, conveyed in fee to Frank E. De Long, Charles F. De Long and Thomas D. Richardson, for the consideration of $12,000, a lot of land known and designated as block No. 41 on a plan of lots of Spring Lake, filed in the office of the clerk of the county of Monmouth on the 16th day of May, 1878, with a description by metes and bounds.   Of the consideration, $4,000 was paid in money, and the residue of $8,000 was paid by certificates issued to the stockholders of the company by way of dividends—the plaintiffs being stockholders and receiving such certificates. Each certificate is, by its terms, made receivable as payment of $1,000 from the bearer for purchase-money due on any lot bought of the company.

The deed contained a covenant that the party of the first part was seized in its own right of an absolute and indefeasible estate of inheritance in fee-simple, and had good right, full power and sufficient authority in law to grant, bargain, sell and convey the same, and a covenant also for peaceable possession.   Then follows a covenant that the premises were free from all former mortgages, judgments and executions, and of and from all other encumbrances whatever, and also a covenant of warranty.   The breach assigned is that the lot conveyed, together with other lands of the company, had been dedicated to public use by the Spring Lake Land Company, under which the defendant took title, as a park and way of access to the waters of Spring lake.   The plaintiffs' case is founded on a contention that at the time the

deed was made to them the premises had previously been dedicated to a public use.

The Spring Lake Beach Improvement Company was incorporated as a land company in 1875. *Pamph. L., p.* 100. That company owned a tract of about four hundred acres, and in 1875 they caused to be laid out a plan of lots on this tract of land. Within the borders of the tract owned by the company was Spring lake, a body of water that gave special value to the entire tract. The map was made. by Frederick Anspach, the surveyor and engineer of the company, and was by him revised and corrected in the year 1876, and filed in the office of the clerk of the county of Monmouth May 16th, 1878. The premises in question were known as block No. 37 on the original map of 1875, and as block No. 41 on the revised map of 1876. It contains from three to five acres of land.

The defendant company was organized under the act of the legislature, entitled "An act concerning corporations," by a certificate of organization dated November 29th, 1889, under the name of the Spring Lake and Sea Girt Company. By a deed dated December 19th, 1889, the Beach Improvement company conveyed to the Spring Lake and Sea Girt Company the tract of land owned by the former company. The case shows that the map of 1876 was filed in the county clerk's office. It also appears that the company, in making conveyance of property to purchasers, referred to the map, and, after the description of the premises conveyed, described the same by lot number and as being a lot on plan of lots made by Frederick Anspach and duly filed in the clerk's office of the county of Monmouth.

The evidence is plenary that the map, with conveyances made by reference thereto, was a dedication of the streets delineated upon it. This lot, No. 41, borders on Spring lake, and lies between Passaic avenue and the lake. There is no indication on the face of the map that this lot was dedicated to a public use, except that the map indicates that the lot is covered with trees. The proof is that this parcel was unenclosed and that there were seats on it, and that it was used

by children as a pleasure-ground; but the evidence is not sufficient, of itself, to show a dedication arising from user. There is evidence that would justify such a conclusion in the fact that from the time the Spring Lake Improvement Company acquired title to its lands down to the time the conveyance was made to the Spring Lake and Sea Girt Company, a period of sixteen years, the officers and agents of the first-named company, for the purpose of securing purchasers of their lots, represented to all who intended becoming purchasers that the land was to be kept open for the use of the public and the lotowners. Mr. Anspach, who made the map and was in the employ of the company as engineer and agent for the sale of lots from 1874 to 1884, testified that in making sales of lots it was represented to the purchaser that the land between both of the borders of the lake and the lines of the avenues was to be left open for public use; that these representations were made by directors and officers and at board meetings. Mr. Willetts, who was an agent of the company for the sale of lots about 1876, testified that he was authorized to represent that the lotowners had the use of the lake, and that the portions environing the lake, between the roads and the lake, were for public use, and that he made such representations to the persons to whom he made sales; that he stated to the board of directors that he had made these representations when selling lots, and that they never made any question about it; they made the same representations; that people rowed upon the lake, sailed upon it and fished in it. Devine, who was superintendent of the company from 1878 to 1889, testified that he had authority from the officers of the company to make statements concerning the tract of land around the lake when he was making sales; that he was instructed to inform anybody who wanted the privilege of putting boats on the lake that they could do it; it was free to the public at all times, and that the margin of land was for park purposes, and that he made these representations. It is unnecessary to refer to other testimony on this subject; it is sufficient to say that it was amply sufficient to justify the finding of the jury that this plot of ground was dedicated

to public use; and that question was properly submitted to the jury in the charge of the court.

The learned judge charged the jury that if these lands were dedicated, the dedication was irrevocable, and that where the lands conveyed are "subject to public easement or servitude which cannot be removed, the covenantee is entitled to the difference between the value of the premises if the title was good and its value as diminished by such public easement or servitude, not to exceed the consideration actually paid." The consideration expressed in the deed is $12,000. Of this $4,000 was paid in cash, and land scrip issued by the company by way of dividends was turned in at its face value of $8,000. The judge charged the jury that if, at the date of the deed, the scrip was worth less than its par value, that fact should be considered in assessing damages in favor of the plaintiff. He then instructed the jury to find what this scrip was worth, and, "adding its value to the $4,000, you have a starting point for the price, and then you say how much that should be diminished by this easement."

He also instructed the jury that the plaintiffs were entitled to interest at six per cent. from the date of the deed, August 23d, 1892, to November 7th, 1899. The jury found a verdict for the plaintiffs for $17,188. The interest allowed was for a longer term than six years.

In the declaration the plaintiffs count only on the covenant against encumbrances. The general doctrine of the law is that an easement upon the premises conveyed is a breach of the covenant against encumbrances; but lands dedicated to the public use cannot strictly be regarded as an easement. When the dedication is complete, the local authorities cannot discharge the dedication; the legislature alone has power to relieve the dedicated lands and discharge the public servitude. *Hoboken Land Improvement Co.* v. *Hoboken,* 7 *Vroom* 540. Under the evidence in this case the land company did not have title and had no right to convey. Strictly speaking, the plaintiffs should have counted upon the covenant of seizin and for power and authority to make sale. But the measure of damages for the breach of a covenant against encumbrances,

where it is of such a character as to amount to a failure of title, is the same as the measure of damages for the breach of a covenant of seizin, namely, the consideration money and interest. *Huyck* v. *Andrews,* 113 *N. Y.* 81; 2 *Suth. Dam.* 326; *Prescott* v. *Trueman,* 4 *Mass.* 627; *Stewart* v. *Drake,* 4 *Halst.* 139. For present purposes we propose to consider this case as if the plaintiffs had counted also on the covenant of seizin.

It is insisted, on behalf of the defendant, that there was error in the charge of the judge in allowing interest for more than six years, the contention being that the measure of damages must be the same as the legal rule in case of the breach of a covenant of warranty, namely, the consideration money, with interest not exceeding six years antecedent to the eviction.

A covenant of seizin is an assurance to the purchaser that the grantor has the very estate in quantity and quality which he purports to convey. *Rawle Cov. Tit.* 77. It is a covenant that is satisfied only by the transfer of an indefeasible title, especially where, as in this case, the covenant is for an indefeasible estate of inheritance in fee-simple, and it is broken as soon as made if the title be from any cause defeasible. *Id.* 81; 8 *Am. & Eng. Encycl. L.* 90, 183; 2 *Suth. Dam.* 255. For a total breach of the covenant of seizin or good right to convey, where nothing passes by the conveyance, the measure of damages is the amount of consideration paid and interest. *Sedgw. Dam.* [175] 195; *Smith* v. *Strong,* 14 *Pick.* 128; *Chapel* v. *Bull,* 17 *Mass.* 213, 221; 8 *Am. & Eng. Encycl. L.* 184. The reason on which the consideration and interest furnishes the general rule for admeasuring damages in an action for the breach of the covenant of seizin, where, at the time of the execution of the deed, the grantor does not own the land, is well stated by Chief Justice Parker, in a Massachusetts case, in these words: "The rule for assessing the damages arising from this breach is very clear. No land passing by the defendant's deed to the plaintiff, he has lost no land by the breach of this covenant. He has lost only the consideration he paid for it. This he is entitled to recover

back, with interest to this time." *Bickford* v. *Page*, 2 *Mass.*
455, 461. Where the plaintiff has never got into possession
of the land, and in consequence of the want of title never can,
the consideration money and interest is clearly the proper
measure of damages. The action on the covenant then comes
in place of an action for money had and received on failure
of consideration. *Mayne Dam.* 143. There are conditions
under which the plaintiff suing on such a covenant recovers
less than the consideration money—where the grantee obtains
some advantage from the lands conveyed; as, for instance,
where he has had possession, or the eviction is from a part of
the premises conveyed. In the former case, the use of the
lands conveyed is regarded as an equivalent, *pro tanto,* for the
interest on the purchase-money; in the latter case, the true
measure of damages is the value of the part to which title has
failed in proportion to the price of the whole, the computa-
tion being on the basis of the consideration money. *Morris* v.
*Phelps,* 5 *Johns.* 49; *Guthrie* v. *Pugsley,* 12 *Id.* 126. *Hymes*
v. *Esty,* 133 *N. Y.* 342, 347, is a case decided upon the same
principle. There it was held that in the dedicated lands the
plaintiff had acquired title to the fee, and the fee value of the
strip was to be deducted from the consideration money. The
judge delivering the opinion of the court said: "The cases
prescribing the rule of damages where there has been an entire
failure of title to the premises, or some definite portion of
them, or a total deprivation of the right of possession and en-
joyment, have no application. If the eviction has been from
all the lands conveyed, the recovery has been limited to the
purchase-price paid and interest from the time of the dispos-
session; if from a definite part capable of physical ascertain-
ment and boundary, then to such part of the original price
as bears the same ratio to the whole consideration that the
value of the land to which the title has failed bears to
the value of the whole premises."

With respect to the period of time for which interest shall
be allowed, the decisions of the courts of our sister states are
not harmonious. The Supreme Court of New York, as early
as 1805, adopted the rule that interest on the consideration

money should be allowed to the vendee for so long a time as he may be required to pay *mesne* profits to the owner of the paramount title. The theory upon which this rule was adopted was that originally the vendee, if evicted, recovered only what was deemed an equivalent to the purchase-money, without interest, for he received other lands equal in value to the lands sold at the time of the sale. Chief Justice Kent, delivering the opinion of the court, said that the rule would be the same at this day had not the action for *mesne* profits been introduced, which takes away the intermediate profits of the land, and that, therefore, interest ought to commence at the point of time with the obligation to pay *mesne* profits. *Staats* v. *Executors of Ten Eyck,* 3 *Cai.* 111, 114. The rule adopted in this case has become the settled law in the State of New York. *Caulkins* v. *Harris,* 9 *Johns.* 324; *Bennet* v. *Jenkins,* 13 *Id.* 50; *Baldwin* v. *Munn,* 2 *Wend.* 399, 405; *Kelly* v. *Dutch Church of Schenectady,* 2 *Hill* 105; 2 *Kent* 476; *Sedgw. Dam.* 182; *Rawle Cov. Tit.* 300. This rule of allowing interest only for six years has not been followed in Massachusetts. In *Whiting* v. *Dewey,* 15 *Pick.* 428, 435, Mr. Justice Wilde, delivering the opinion of the court, said: "In New York the rule is, in such a case, not to compute interest for more than six years back; but no such limitation has ever been sanctioned in this commonwealth." *Sumner* v. *Williams,* 8 *Mass.* 162, 221; *Smith* v. *Strong,* 14 *Pick.* 128. The cases on this subject in the courts of our sister states are cited in *Sedgw. Dam.* 176, &c., and in 8 *Am. & Eng. Encycl. L.* (*N. S.*) 192, *tit. "Covenants."*

In the present case the deed from the company conveyed no title to the dedicated lands. The plaintiffs got no title to the premises, and never can get title, unless the legislature should intervene and discharge the public use. They never had possession of the property or derived any benefit from the conveyance, and the land company has had the consideration money in its possession. Under these circumstances it would seem reasonable and consistent with the principle upon which the recovery of the consideration is allowed that the plaintiff should be allowed to recover the consideration paid, with in-

terest from the time of payment; but this court, as far back as 1839, adopted as a rule in an action for the breach of a covenant of warranty of title on eviction to allow for damages the amount of the consideration money, with interest thereon not exceeding six years antecedent to the eviction, together with costs, and no more. This decision was made upon the citation and following of the New York cases. *Morris* v. *Rowan, 2 Harr.* 304. This rule for admeasuring damages is of so long standing in this state that it ought not to be disturbed at this time. We think it is applicable to this case.

The trial court laid down the correct rule for ascertaining the amount and value of the consideration paid, but we think that the interest thereon should have been computed according to the rule laid down in *Morris* v. *Rowan, supra.*

There should be a new trial, unless the plaintiff will remit from the amount of his verdict the interest beyond six years.