**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-1072-21
                 A-1282-21

CASINO BEACH PIER, LLC,

      Plaintiff-Appellant,

v.

BOROUGH OF SEASIDE HEIGHTS,
BOROUGH COUNCIL OF THE
BOROUGH OF SEASIDE HEIGHTS,
and SAMUEL TILLES, INC.,

      Defendants-Respondents.

_____

500 BOARDWALK REALTY, LLC,
and COIN CASTLE AMUSEMENTS,

      Plaintiffs-Appellants,

v.

BOROUGH OF SEASIDE HEIGHTS,
BOROUGH COUNCIL OF THE
BOROUGH OF SEASIDE HEIGHTS,
and SAMUEL TILLES, INC.,

      Defendants-Respondents.

_____

Argued May 10, 2023 – Decided November 19, 2024

Before Judges Accurso, Firko and Natali.

On appeal from the Superior Court of New Jersey,
Law Division, Ocean County, Docket Nos. L-2917-17
and L-2952-17.

Ronald S. Gasiorowski argued the cause for appellant
Casino Beach Pier, LLC (Gasiorowski & Holobinko,
attorneys; Ronald S. Gasiorowski, on the briefs).

Bernard M. Reilly argued the cause for appellants 500
Boardwalk Realty, LLC, and Coin Castle Amusements
(Bernard M. Reilly, LLC, attorneys; Bernard M.
Reilly, on the briefs).

Terry F. Brady argued the cause for respondents
Borough of Seaside Heights and Borough Council of
Borough of Seaside Heights (Brady & Kunz, PC,
attorneys; Terry F. Brady, on the briefs).

Robert C. Shea argued the cause for respondent
Samuel Tilles, Inc. (R.C. Shea & Associates, PC,
attorneys; Robert C. Shea, on the briefs).

The opinion of the court was delivered by

ACCURSO, P.J.A.D.

Plaintiffs Casino Beach Pier, LLC and 500 Boardwalk Realty, LLC and

Coin Castle Amusements appeal from a final judgment rejecting their

consolidated prerogative writs challenge to municipal ordinances adopted by

defendant Borough Council of the Borough of Seaside Heights designating two

A-1072-21

lots owned by defendant Samuel Tilles, Inc. — which plaintiffs would prefer not to see developed — as within the Borough's Resort Recreational zone.

More specifically, plaintiffs appeal from two partial summary judgments, the first entered on November 26, 2018, which rejected their claim that the lots had been irrevocably dedicated to the Borough by implication as a result of a 1910 filed map, that the filed map created private rights in others who trace their title to that map that prohibits a re-zoning of Tilles' lots, and that the new zoning, by eliminating the lots' decades-long use as a public beach, violated the public trust doctrine; and the second, entered on June 25, 2019, which rejected their claim that the ordinances were invalid due to defective notice. Plaintiffs also appeal the court's judgment after trial rejecting their remaining claims that adoption of the ordinances was arbitrary and capricious because they are inconsistent with the Borough Master Plan.

Because we agree Tilles was entitled to both partial summary judgments and that Judge Marlene Lynch Ford's findings following the bench trial are amply supported by competent evidence in the record, we affirm.

This dispute has a long history, a large part of which is not particularly relevant to the issues plaintiffs reprise on this appeal. We thus sketch only so much as required to put our decision in context. Plaintiffs and Tilles each own

3

property along the Seaside Heights boardwalk. Tilles' property, which has no street address, is designated as Block 99.01, Lots 1.03-1.06 on the Borough tax map. The lots lay under (Lot 1.04) and east of the boardwalk (Lots 1.03, 1.05) running into the Atlantic Ocean (Lot 1.06). Lot 1.05 is an approximately 100 x 155-foot beach lot along the northernmost edge of Block 99.01, roughly in line with the south side of Grant Avenue. Lot 1.06 is directly east of Lot 1.05 and extends eastward from the mean high water line to the pierhead line in the Atlantic Ocean. Immediately south of Lots 1.05 and 1.06 is the Borough's public beach, which extends approximately seven blocks to DuPont Avenue and the former Funtown Pier, the southside of which abutted Porter Avenue and the Borough line with Seaside Park.

Although only Lots 1.05 and 1.06 are at issue in this case, Tilles' Lots 1.03-1.06 in Block 99.01 never had a zoning designation on the Borough tax map and are not included in the lists of individual properties located in the Public or Resort Recreational zones in the Borough zoning ordinances.[1] In

---

[1] The Borough included Lot 1.03 in the Resort Recreational zone by ordinance in 2015, as amended in 2017. No one disputes that for many years prior to that change, Tilles operated the Sand Castle, a large arcade building housing retail, food stands and games of chance on Lot 1.03 on the east side of the boardwalk, which was destroyed in Superstorm Sandy. Tilles also owns the parcel on the west side of the boardwalk, Block 8.02, Lot 1, adjacent to Lot 1.04 and across

2007, the Planning Board's engineer, Charles Halloway, provided a letter to the Board in connection with an application by Tilles for minor site plan approval, stating: "The Borough ordinances do not specifically list block 99.01, lots 1.03-1.06 in a zoning district. The lots are adjacent to the 'recreation/open space' areas of the Borough. We submit that it was the Borough's intent to include the property in question in the [Resort Recreational] Zone." The engineer suggested the Borough ordinances be amended to correct the oversight and include Lots 1.03-1.06 in the Resort Recreational zone.

Casino Beach owns the property at 819 Boardwalk, Block 99.02, Lot 1.02 on the Borough's tax map, immediately north of Tilles' property. The Casino Beach property consists of boardwalk, beach and a pier into the Atlantic Ocean with amusement rides, food concessions and games. Casino Beach's property is in the Borough's Resort Recreational District A zone.[2] Following partial destruction of the pier in Superstorm Sandy, the Borough deeded a block of the public beach north of the pier to Casino Beach, which

_____

the boardwalk from Lot 1.03. That parcel is occupied by "Jimbo's Bar and Grill" and is also in the Resort Recreational zone.

[2] The Resort Recreational District A zone allows for the same uses allowed in the Resort Recreational zone as well as adult entertainment establishments, tattoo parlors and retail establishments selling firearms.

A-1072-21

extended its pier across the former public beach, scaling back its reach into the ocean. During the pier's reconstruction, Casino Beach used Tilles' beach lot, Lot 1.05, as a staging area for the construction work.

500 Boardwalk owns 519 Boardwalk, Block 602, Lot 1.01 on the Borough tax map. Coin Castle owns 511 Boardwalk, Block 602, Lot 1.02. The properties are located about 450 feet south of Tilles' land on the west side of the boardwalk.

In 1909, Manhassett Realty Company acquired a 93-acre tract in what is now Seaside Heights, running between Barnegat Bay and the Atlantic Ocean, including the riparian rights out to the pierhead line. The following year, Manhassett filed a map with the clerk's office subdividing the ninety-three acres into twenty-foot lots, blocks, and streets, bordered by Bay View Avenue in the west, Grant Avenue in the north, Ocean Avenue in the east, and Porter Avenue in the south, which marks the border with Seaside Park. All of the deeds out of Manhassett contain a common restriction, amounting to a neighborhood scheme, forbidding such things as hog pens, slaughterhouses, or other nuisances, as well as "any dangerous, noxious, unwholesome or offensive establishment, trade, calling or business whatsoever, [or] any

building for the sale or manufacture of beer or liquors." Tilles, 500 Boardwalk and Coin Castle all trace their title to Manhassett and that map.

Specifically, Tilles traces its title to Block 99.01, Lots 1.03-1.06 to two deeds from Manhassett to John F. Walsh, the first issued in 1913 for Lots 1 and 2, in Block H along the west side of Ocean Avenue, as depicted on the filed 1910 Map and the second in 1917 for adjacent Lots 3-5. Both deeds conveyed the title to the lots, as well as all the land east of those lots into the ocean to the pierhead line, "[s]ubject, however, to the rights of the public in and over Ocean Avenue now located and shown on [the 1910] map." The Walsh deeds contain an additional restriction, not contained in any other Manhassett deed referencing the filed map, providing that "no building or structure of any kind whatsoever shall be erected on any part of the above described premises lying eastwardly of the westerly side of Ocean Avenue."

500 Boardwalk's and Coin Castle's properties, Block 602, Lots 1.01 and 1.02 on the Borough's tax map, were lots 1 through 10 in Block F along the west side of Ocean Avenue between Sumner and Webster Avenues on Manhassett's 1910 map. Neither 500 Boardwalk nor Coin Castle have included their deeds or chains of title in the record. Plaintiffs, however, do not dispute that unlike the Walsh deeds to lots 1 through 5 in Block H and the

7

1915 deed from Manhassett to Bertha E. Vanderslice for lots 4 through 9 in Block A, lying between Dupont Avenue and the municipal boundary with Seaside Park along Porter Avenue, which also included all the land east of those lots to the pierhead line, later developed as the Funtown Pier, 500 Boardwalk's and Coin predecessors in title were not deeded any property east of the west side of Ocean Avenue on the 1910 map.

Plaintiffs instead maintain that the 1910 Map, and the restrictions in the Walsh deeds prohibiting the erection of any building or structure east of the west side of Ocean Avenue, "established the beach as a dedicated public beach," of which 500 Boardwalk and Coin Castle, along with all other successors in title to lots conveyed with reference to the 1910 map are beneficiaries, creating "private rights in beach lots 1.05 and 1.06 that cannot be usurped by defendants." They further contend the dedicated beach was "accepted by the municipality," which "cannot release that dedication and rezone that dedicated beach property for private commercial use." We agree with Judge Ford that plaintiffs' arguments are entirely without merit, having no support in either the facts or the law.

The fatal weakness in plaintiffs' argument is that it depends entirely on Manhassett having dedicated the beach to Seaside Heights by virtue of the

A-1072-21

1910 filed map without any proof it did so, and a myriad of facts strongly suggesting it did not. It has long been the law that "[d]edication is 'the permanent devotion of private property to a use that concerns the public in its municipal character.'" Twp. of Middletown v. Simon, 193 N.J. 228, 240 (2008) (quoting Roger A. Cunningham & Saul Tischler, Dedication of Land in New Jersey, 15 Rutgers L. Rev. 377, 377 (1961)). "[I]n determining whether the owner intended to dedicate land, 'it is not the actual, unrevealed intention that controls, but rather the intention manifested by the acts or conduct of the dedicator.'" Simon, 193 N.J. at 241 (quoting Haven Homes, Inc. v. Raritan Twp., 19 N.J. 239, 246 (1955)).

Critically, neither the 1910 filed map nor any Manhassett deed referencing the map refers to a dedicated beach. The 1910 map depicts blocks and lots and named streets, including Ocean Avenue at its easternmost edge, but does not identify any area as a "beach." Although plaintiffs necessarily concede the point, they assert "[d]epiction of the area on the map as open without lot numbers or platting can be sufficient to establish the area as 'dedicated' as an open public area," and in the late 1800s or early 1900s "[m]unicipalities frequently did not 'accept' the dedications sometimes for decades or by specific actions." They contend "[t]hat the dedication as the

9

beach has been effectively 'accepted' by Seaside Heights and the public is evidenced by [its] use for about a 100 years as a public beach area."

There is no question but that Manhassett dedicated the streets depicted on the 1910 map to the Borough. See Pope v. Town of Union, 18 N.J. Eq. 282, 283 (Ch. 1867) (holding it "now well settled" that an owner of a tract of land who "lays it out in lots and streets, by a map publicly exhibited or filed in the proper public office, and sells lots laid out on said map by a reference thereto, [has] thereby dedicate[d] the streets on said map to the public").

And we acknowledge the possibility that depiction of an open area on a filed map without lot numbers or platting might, depending upon the proofs, be sufficient to establish the area as dedicated to the public. See De Long v. Spring Lake & Sea Girt Co., 65 N.J.L. 1, 4-5 (Sup. Ct. 1900) (although "no indication on the face of the map" that lot no. 41, between Passaic Avenue and Spring Lake, which body of water was within the borders of the tract, "was dedicated to a public use," the jury properly found lot was dedicated based on "represent[ations] to all who intended becoming purchasers" that "the lot owners had the use of the lake, and that the portions environing the lake, between the roads and the lake, were for public use"). But there is no like evidence in this record nor any precedent to support a finding that Manhassett

10

intended to dedicate property to the Borough — by implication — lying

beyond the streets demarcating the 1910 filed map's borders.

Instead, the factual record discloses that Manhassett in 1913, three years

after filing its map, deeded Walsh the land lying east of lots 1 and 2 out to the

pierhead line, subject "to the rights of the public in and over Ocean Avenue

now located and shown on [the 1910] map."  Two years later, Manhassett

similarly conveyed to Vanderslice lots 4 through 9 in Block A between Dupont

and Porter Avenues along with all the land east of those lots to the pierhead

line.

Moreover, Manhassett conveyed to the Borough all of the riparian rights

it had acquired from Burr from the mean high water line to the pier head line

between Grant and Dupont Avenues in 1916, and in 1919 deeded to the

Borough the land east of Ocean Avenue between Grant and Dupont Avenues to

the mean high water line.  The Borough subsequently vacated the public's

interest in Ocean Avenue by ordinance in 1925.[3]  Would there any doubt that

---

[3]  The legal effect of these various deeds and the vacation of Ocean Avenue
was to vest in Walsh title to lots 1-5, and all the land east of those lots,
including the land within Ocean Avenue to the mean high water line.
Although Walsh also retained title to the land east of the mean high water line
to the exterior pierhead line for lots 1 and 2 by virtue of its 1913 deed,
Manhassett's 1917 conveyance of the riparian rights east of lots 3, 4, and 5,

11

Manhassett did not dedicate the land east of Ocean Avenue to the Borough "by implication" by virtue of the 1910 filed map, which there is not, Manhassett's subsequent conveyance of those same lands to Walsh, Vanderslice and the Borough in the years immediately following the filing of the map would unequivocally dispel it.[4]

---

were not conveyed to Walsh as a result of the prior transfer of those rights from Manhassett to the Borough in the 1916 deed. Manhassett's 1919 deed did not impair Walsh's title to the beach east of lots 1-5 because Manhassett had already transferred title to those lands to Walsh in its 1913 and 1917 deeds. When Tilles acquired lots 1-5 by way of sheriff's deed in 1940 following a foreclosure, the exception for the riparian rights east of lots 3, 4, and 5 did not appear in the deed. Tilles and the Borough agree that since 1940 both Tilles and the Borough have acted in the belief that Tilles rightfully owned all property east of lots 1-5 to the pierhead line. Tilles has paid taxes on the parcel since 1941 and has for many years at various times leased Lot 1.05 and 1.06 to the Borough in lieu of payment of taxes.

[4] Although the record appears quite clear in this instance that there was no implied dedication of the beach in the 1910 filed map, we are mindful that "attempting to interpret and give effect to deeds [and maps] evidencing conveyances made over a hundred years ago is often very difficult, involving unfamiliar laws and customs of conveyancing," Phoenix Pinelands Corp. v. Davidoff, 467 N.J. Super. 532, 619 (App. Div. 2021), and of the advice of the former Court of Chancery that a court of equity should deny all relief to one who has delayed "asserting his rights, until the proofs respecting the transaction, out of which he claims his rights arose, are so indeterminate and obscure, that it is impossible for the court to see, whether what seems to be justice to him is not injustice to his adversary," McCartin v. Adm'r of Traphagen, 43 N.J. Eq. 323, 338 (Ch. 1887), aff'd, 45 N.J. Eq. 265 (E. & A. 1889).

12

As to the restriction in the Walsh deeds, providing that "no building or structure of any kind whatsoever shall be erected on any part of the above described premises lying eastwardly of the westerly side of Ocean Avenue," that restriction is limited to those two deeds and not a part of the neighborhood scheme created by Manhassett in the deeds conveyed with reference to the 1910 map. The restriction is thus not enforceable by any other lot owner or their successors in title such as 500 Broadway or Coin Castle.[5] Moreover, the surviving directors and trustees of Manhassett specifically released the Walsh restriction by deed recorded in 1955. Although plaintiffs assert that a deed made by the two surviving directors of a long defunct corporation "would be of no legal effect or validity," they provide no support for that proposition and the law has long been to the contrary. See Joachim v. Belfus, 107 N.J. Eq. 240, 245 (Ch. 1930) ("Upon dissolution of a corporation, its corporate existence continues for the winding up of its affairs and conveying its real estate. In activity a corporation is managed by a board of directors; in dissolution by a board of trustees, the former directors.").

_____

[5] As Judge Ford noted, Casino Pier is not a beneficiary of the Manhassett restrictions creating the neighborhood scheme or those in the Walsh deeds as it does not trace its own title to the 1910 filed map.

Judge Ford rejected plaintiffs' argument that the neighborhood scheme restrictions prevented the Borough from designating Tilles' property within the Resort Recreational zone as utterly without merit.  See Tobin v. Paparone Const. Co., 137 N.J. Super. 518, 527 (Law. Div. 1975) (noting a zoning ordinance "is entirely divorced in concept, creation, enforcement and administration from restrictions arising out of agreement between private parties who may . . . impose whatever restrictions upon the use of their lands that they desire, such covenants being enforceable only by those in whose favor they run").

The judge also found that although the neighborhood scheme imposed by Manhassett envisioned a residential community, "clearly the properties in and around [Tilles'] property were intensively developed for commercial and recreational uses."  The judge found that enforcing "these archaic deed restrictions, which were apparently abandoned in good faith by the predecessors in title and never enforced by the Borough" against Tilles "would clearly be inequitable."  The law is plainly in accord.  See Murphy v. Trapani, 255 N.J. Super. 65, 74 (App. Div. 1992) (acknowledging pervasive violations of a neighborhood scheme resulting in a change in the character of the

14

neighborhood indicate an abandonment of the original plan "which makes enforcement of the plan inequitable because of changed conditions").[6]

We also agree with Judge Ford that the Borough's notice of the zoning changes met statutory requirements. The judge rejected plaintiffs' argument that the notices of the proposed amendments for Lot's 1.05 and 1.06 did not include a "clear and concise statement prepared by the clerk of the governing body setting forth the purpose of the ordinance," as required by N.J.S.A. 40:49-2. As Judge Ford found, the public notice quoted the language of the ordinances verbatim. We quote the ordinance referring to Lot 1.05:

---

[6] We do not consider plaintiffs' argument that the public trust doctrine "weighs against the validity of the Borough ordinances and actions." Although plaintiffs included a count for violation of the public trust doctrine in their complaints, they did not create a record in the trial court in opposition to defendants' motion for partial summary judgment dismissing that count. The failure to establish a record regarding the effect the zone change of this 100-foot stretch of beach has on the public's "reasonable access to the sea," Matthews v. Bay Head Imp. Ass'n, 95 N.J. 306, 324 (1984), prevents our review of the issue. See State v. Robinson, 200 N.J. 1, 19 (2009) (noting "[a]ppellate review is not limitless"; its "metes and bounds" are defined by "the points of divergence developed in proceedings before a trial court"). Cf. WDSL & Assocs., 452 N.J. Super. at 413 n.4 (cautioning courts in tax sale matters not to be "swayed or distracted" by a litigant's "attempt to seize the moral high ground" by professing concern "about the municipality's collection of taxes or the property owner's right to freely convey title" because "in reality, the contestants' interests in those matters are secondary at best to what they are truly after").

ORDINANCE 2017-17

AN ORDINANCE OF THE BOROUGH OF
SEASIDE HEIGHTS, COUNTY OF OCEAN, STATE
OF NEW JERSEY, AMENDING THE BOROUGH
CODE OF THE BOROUGH OF SEASIDE HEIGHTS,
SO AS TO AMEND CHAPTER 246, ENTITLED
"ZONING AND LAND USE," TO ADD BLOCK
99.01 LOT 1.05 TO THE RESORT RECREATIONAL
ZONE.

WHEREAS, the Mayor and Borough Council wish to more properly zone Block 99.01, Lot 1.05 as part of the Resort Recreational Zone, which designation is consistent with the Borough Master Plan, the recommendations of the Planning Board Engineer and the existing zoning in the surrounding area.

NOW, THEREFORE, BE IT ORDAINED by the Mayor and Borough Council of the Borough of Seaside Heights, County of Ocean, and State of New Jersey, as follows:

SECTION 1, Chapter 246 of the Borough Code of the Borough of Seaside Heights, entitled "Zoning and Land Use," is hereby amended and supplemented at §246-40, entitled "Resort Recreational Zone," so as to amend subsection B thereof to add a paragraph (11) which shall read as follows:

(11) Lot No. 1.05 in Block 99.01.

SECTION 2. This zoning regulation amendment will be referred to the Seaside Heights Planning Board for approval, as required by N.J.S.A. 40:55D-23.

16

A-1072-21

SECTION 3. Notice of the public hearing on second reading of this amendment to the zoning ordinance shall be given at least 10 days prior to the hearing by the municipal clerk in accordance with the procedures of N.J.S.A. 40:55D-62.1.

SECTION 4. This ordinance shall be filed in the office of Ocean County Planning Board.

SECTION 5. All ordinances, parts of ordinances inconsistent herewith are hereby repealed.

SECTION 6. If any section, subsection, sentence, clause, phrase or portion of this ordinance is for any reason held to be invalid or unconstitutional by a court of competent jurisdiction, such portion shall be deemed a separate, distinct and independent provision, and such holding shall not affect the validity of the remaining portions hereof.

SECTION 7. This ordinance shall take effect after second reading and publication as required by law.

NOTICE IS HEREBY GIVEN that the foregoing ordinance was introduced and passed by the Borough Council on the first reading at a meeting of the Borough Council of the Borough of Seaside Heights held on the 5th day of July, 2017, and will be considered for second reading and final passage at a regular meeting of the Borough Council to be held on the 2nd day of August, 2017, at 5:00 p.m., in the Municipal Court Room located at the George E. Tompkins Municipal Complex, 116 Sherman Avenue, Seaside Heights, New Jersey, at which time and place any persons desiring to be heard upon the same will be given the opportunity to be so heard.

The ordinance for Lot 1.06 is identical, but for the Lot identifier.

Judge Ford rejected plaintiffs' claim that the notices were "misleading and inaccurate," and ran afoul of the requirements we set forth in Wolf v. Shrewsbury, 182 N.J. Super 289, 295 (App. Div. 1981) and Rockaway Shoprite Associates, Inc., v. City of Linden, 424 N.J. Super. 337, 345 (App. Div. 2011) that proper notice entails "a brief summary of the main objectives or provisions of the ordinance," Shrewsbury, 182 N.J. Super at 295, and that such summary needs to "apprise interested readers throughout the municipality of the zoning changes contemplated as well as their nature and import," Rockaway, 424 N.J. Super. at 345.

The Borough's notice explicitly set forth the purpose of the ordinances to rezone Lots 1.05 and 1.06 in Block 99.01 to the "Resort Recreational Zone." Although the Borough might have provided readers more detail, such as an explanation that the then existing ordinances did not list Block 99.01, Lots 1.05 and 1.06 in any zoning district, neither the statute nor the case law requires such extra detail and plaintiffs do not explain why an "interested reader" would have "no knowledge" that the ordinances in question were changing the zoning. The notice was certainly sufficient to "set forth the purpose of the ordinance" as required by N.J.S.A. 40:49-2.

The judge likewise rejected plaintiffs' claim that the notices violated N.J.S.A. 40:55D-11 and N.J.S.A. 40:55D-62.1. We agree plaintiffs' arguments on these points fell short.

N.J.S.A. 40:55D-11 governs the content of notices for development applications or amendment of the master plan, not amendment of a zoning ordinance. Thus, it does not apply. N.J.S.A. 40:55D-62.1, requiring notice to affected property owners of zone classifications or boundary changes, which is applicable, states nearby owners must be provided: "the date, time and place of the hearing, the nature of the matter to be considered and an identification of the affected zoning districts and proposed boundary changes, if any, by street names, common names or other identifiable landmarks, and by reference to lot and block numbers." We held in Mahwah Realty Associates, Inc. v. Township of Mahwah, 430 N.J. Super 247, 257-58 (App. Div. 2013), that "the additional identification requirements," that is street names, common names, other identifiable landmarks, and lot and block numbers, "apply only to boundary changes, not classification changes."

The parties dispute whether the addition of Tilles' property to the Resort Recreational zone was a boundary change requiring the notice to identify Tilles' property by street name or by some identifiable landmark and lot and

19

block number or a classification change, requiring only identification of the affected zoning district. Plaintiffs have insisted the property was located in the Public Use zone, and thus the amendment extended the boundary of the Recreational Resort zone. Defendants have countered that a review of the zoning maps and ordinances make clear the lots have never been designated in any zoning district, making it a classification change.

Accepting plaintiffs' position that Lots 1.05 and 1.06 were located in the Public Use zone, which the judge noted in that area consisted of "only the oceanfront beaches located to the east of the boardwalk," Judge Ford found that even if considered a boundary change, the mailed notice to nearby property owners "clearly reflected" the inclusion of Lots 1.05 and 1.06 in the Resort Recreational zone by "the most specific available identification of the property" as Tilles' 100-foot of beach and riparian rights was without a street address. Because the notice provided sufficient information to alert the property owners within 200 feet of Tilles' property that the proposed amendment would change the zoning of this 100-foot strip of the beach to Resort Recreational and was not "misleading or confusing from an objectionably reasonable standpoint," the judge found the notice identifying the property by lot and block satisfied N.J.S.A. 40:55D-62.1.

A-1072-21

Although our review is de novo, <u>Myers v. Ocean City Zoning Bd. of Adjustment</u>, 439 N.J. Super. 96, 100 (App. Div. 2015), we find no cause to disagree with Judge Ford's interpretation of N.J.S.A. 40:55D-62.1, which we find "consonant" with "reason and good direction," <u>Mahwah Realty</u>, 430 N.J. Super. at 259 (quoting <u>Schierstead v. City of Brigantine</u>, 29 N.J. 220, 230 (1959)) applied to these facts. Specifically, we note the statute permits notice of a boundary change to all properties within 200 feet of the proposed new boundaries identified by "common names or other identifiable landmarks," and by lot and block number.

What seems clear is the Legislature's determination that identifying a proposed boundary by a common name or some identifiable landmark to persons owning property within 200 feet of the line would provide "a sufficiently clear and definite specification of property and boundaries to enable [those] owners to understand the proposed zoning action and participate in the public hearing thereon," or impel them to look up the lot and block on the tax map in the municipal offices so as to do so. 1 Rathkopf's <u>The Law of Zoning and Planning</u> § 12:25 (4th ed.). We agree with Judge Ford that the mailed notices, which identified the property by lot and block number, the most specific identification available, located, as plaintiffs' argue, in the Public

Use zone, consisting in that area of "only the oceanfront beaches east of the boardwalk," would be added to the Resort Recreational zone, provided all the notice required under N.J.S.A. 40:55D-62.1 in these circumstances. See Pond Run Watershed Ass'n v. Twp. of Hamilton Zoning Bd. of Adjustment, 397 N.J. Super. 335, 348-49 (App. Div. 2008) (finding misidentification of tax map designation of property without street address in public notices and certified letters sent to nearby owners in connection with a proposed variance "did not vitiate the legal sufficiency of the notice").

We also reject plaintiffs' argument that a typographical error as to a date in the September 10, 2017 published post-adoption notices invalidated the ordinance. N.J.S.A. 40:49-2(d) requires a municipality to publish "[u]pon passage, every ordinance, or the title, or the title and a summary, together with a notice of the date of passage or approval, or both" in a newspaper circulating in the municipality. "No other notice or procedure with respect to the introduction or passage of any ordinance shall be required." Ibid.

Four days after adoption, the Borough published the ordinances, with title and summary, in the Asbury Park Press. The post-adoption notices, however, mistakenly advised that the ordinances, which had by the date of publication already been adopted, "will be considered for second reading and

final passage at a regular meeting of the Borough Council to be held on the 6th of September 2017, at 5:00 p.m."

Although the notices were simply duplicates of the pre-hearing notices, they served their purpose of "inform[ing] the public of the governing body's action." Monterey Estates, Inc., v. Planning Bd. of Twp. of Manalapan, 231 N.J. Super. 78, 79 (App. Div. 1989). The notices published post-adoption each announced that "[t]his ordinance shall take effect after second reading and publication." And, as required by N.J.S.A. 40:49-2(d), the published notices included the entirety of the language of both ordinances. As the second reading date had passed by the time of publication, we are satisfied it would have been quite clear to anyone reading the notices that the ordinances had already been adopted. See Pond Run, 397 N.J. Super. at 349 (considering "[a] reasonable person['s]" likely response to an error in a notice in weighing its validity).

Finally, plaintiffs' claims that the ordinances placing Lots 1.05 and 1.06 in the Recreational Resort zone are inconsistent with the Borough's master plan, and that the planning board's "purported 'consistency review'" was "cursory," relying solely on its engineer's opinion, which was improperly based on the master plan reexamination reports without any consideration of

23

the master plan are without sufficient merit to warrant any extended discussion here.  See R. 2:11-3(e)(1)(E).

There is no question but that the Borough referred the proposed ordinances placing Lots 1.05 and 1.06 in the Resort Recreational zone to the planning board for consistency review with the master plan in accordance with N.J.S.A. 40:55D-64; that the planning board undertook that review after having received the report of its engineer and determined by unanimous vote that the proposed ordinances were consistent with the master plan; and timely referred its findings to the Borough Council in accordance with N.J.S.A. 40:55D-26(a).

Judge Ford found the evidence in the record established without doubt that Lots 1.05 and 1.06, "through oversight or neglect," either never had a zoning designation or that its designation was, at best, ambiguous.  The judge found that the Borough Council in adopting these ordinances did not so much effect a change in the property's zoning as correct a longstanding error on the official zoning map.  She noted "[t]he master plan includes an acknowledgment that this community's 'prime function is recreation' and therefore, the designation of the Tilles property as within the [Resort

24                                                      A-1072-21

Recreational] zone is substantially consistent" with recreational use "and further provides for an expansion of that use."

The judge found there was "ample evidence in the record to conclude . . . the Tilles lots were intended to be treated like other surrounding recreational properties," including the adjacent property owned by Casino Pier and the nearby properties owned by 500 Boardwalk and Coin Castle, and that the Tilles lots were "never designated for public use in the [Public] zone." The judge emphasized that the only other privately owned beach properties in the Borough, such as Casino Beach and the former Funtown Pier are in the Resort Recreational District A and the Resort Recreational zones respectively, and indeed that the entire boardwalk was included in one of those two zones.

Having reviewed the extensive record, the judge found no impropriety in the procedure for conformance review and adoption of the ordinances or that their adoption by the Borough Council constituted arbitrary, capricious, or unreasonable action. Having conducted our own de novo review, we agree and affirm Judge Ford's conclusions largely for the reasons expressed in her comprehensive and well-reasoned opinion following the prerogative writs trial. See Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 296 (1965) ("So long as the power exists to do the act complained of and there is substantial

25

evidence to support it, the judicial branch of the government cannot interfere.").

Plaintiffs' remaining arguments, to the extent we have not addressed them, lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION